Robert Carl FOLEY, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2013–SC–000215–MR.

Supreme Court of Kentucky.

March 20, 2014.

Euva Denean Blandford, Meggan Elizabeth Smith, Assistant Public Advocate, Department of Public Advocacy, for appellant.

Jack Conway, Attorney General of Kentucky, David Wayne Barr, Assistant Attorney General, Office of The Attorney General, Office of Criminal Appeals, for appellee.

Opinion of the Court by Justice VENTERS.

Robert Carl Foley appeals from an order of the Laurel Circuit Court summarily denying his motion for post-conviction relief pursuant to CR 60.02(b), CR 60.02(f), CR 60.03, and RCr 10.02. Appellant's motion challenges his two 1993 murder convictions, each of which resulted in the imposition of the death penalty.

As grounds for relief Appellant contends that the trial court erred by concluding that he was not entitled to a new trial based upon "newly discovered evidence." Among that evidence is the report and findings of a forensic firearms expert who concluded that the new information supported Appellant's version of events, that the two victims were each armed with a firearm during the shootings, thereby supporting Appellant's claim that he acted in self-defense in shooting Rodney Vaughn and that Rodney Vaughn, rather than Appellant, shot Lynn Vaughn.

Because the "newly discovered evidence" presented by Appellant falls short of the standards which must be met to obtain relief under the cited rules, we find that the trial court did not abuse its discretion in denying his motion for post-conviction relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the August 1993 trial the Commonwealth presented evidence that Appellant shot and killed brothers Rodney and Lynn Vaughn at Appellant's home in Laurel County, on August 17, 1991. That evidence indicated that a number of people including the Vaughn brothers, Phoebe Watts, Ronnie Dugger, Bill Dugger, Rocky Arthur, Lisa Arthur, Marge Foley (Appellant's wife), Louise Bridges (Appellant's aunt), and several children were gathered at the Appellant's home when Appellant arrived with his friend Danny Joe Bryant. Upon his arrival, Appellant had a revolver concealed under his shirt. The Commonwealth's evidence disclosed that the events leading to the shootings began when Appellant and Rodney Vaughn had a brief fight. After the first altercation had subsided, hostilities escalated again when Rodney pointed his finger at Appellant and warned Appellant not to sucker-punch him again. Appellant responded by knocking Rodney into the living room, drawing his pistol, and shooting Rodney six times.

After the initial shooting everyone fled the house except Appellant, the Vaughn brothers, and Ronnie Dugger. Except for Appellant, Dugger was the only witness to what happened next. He testified that Appellant retrieved another gun from the kitchen, returned to the living room where Lynn Vaughn remained next to his dying brother, and shot Lynn in the back of the head. He then kicked Rodney's corpse, saying "you son of a bitch, you caused me to have to kill my partner [Lynn]."

The Commonwealth presented additional testimony that Appellant then organized Ronnie Dugger, Bill Dugger, and Danny Joe Bryant to assist him in hiding the bodies and covering up the crimes. To this end they dumped the Vaughn brothers' bodies in a creek and attempted to cover up the shootings and cast blame on others. Two days later, authorities discovered the bodies and after further investigation, Appellant was indicted on two counts of murder and other related offenses.

Appellant's version of events greatly differed from the Commonwealth's theory. According to Appellant's trial testimony, the killing of the Vaughn brothers occurred as follows: 1) Appellant and Rodney got into a fight and Appellant knocked Rodney from the kitchen into the middle of the living room; 2) Rodney "started getting back up and he was like, he got up on his knees and when he came back up he pulled the pistol out. He called me a few bad names and said 'I told you I would kill you if you ever hit me again'"; 3) Lynn told Rodney that if he shot Appellant, he would kill him; 4) Lynn then shot Rodney, and as soon as Lynn fired, Rodney turned and shot Lynn; 5) in defense of himself and Lynn, Appellant shot Rodney; and 6) another shot rang out, and Appellant turned to see Dugger standing over Lynn with a pistol in his hand, having shot Lynn in the back of the head.

The jury rejected Appellant's version of events, and found him guilty of two counts of murder. Based upon the jury's recommendation, the trial court sentenced Appellant to death for both murders.[1] Appellant's convictions and sentences were affirmed on direct appeal. See *Foley v. Commonwealth*, 942 S.W.2d 876 (Ky.1996). Appellant was similarly unsuccessful in challenging his conviction in his post-conviction RCr 11.42 petition, see *Foley v. Commonwealth*, 17 S.W.3d 878 (Ky.2000).[2] He again failed to obtain relief in his federal habeas corpus proceedings, see *Foley v. Parker*, 488 F.3d 377 (6th Cir.2007). In addition to the foregoing proceedings, according to the trial court, Appellant has filed five CR 60.02 motions challenging his conviction and sentence.

Appellant's latest challenge to his convictions is founded upon a report recently prepared by John Nixon, a forensic expert on firearms and ballistics. As further discussed below, in his report Nixon explains that he examined the available evidence, including the trial testimony, the autopsy report, and crime scene diagrams, and concluded that the evidence supports Appellant's version of events and, correspondingly, contradicts the Commonwealth's theory.

Appellant filed his latest motion for post-conviction relief on February 21, 2013. The trial court summarily denied Appellant's motion without conducting an

---

1. Appellant was later charged with four more murders after police discovered four corpses in a septic tank in Laurel County, was convicted of those charges, and was sentenced to four additional death sentences. See *Foley v. Commonwealth*, 953 S.W.2d 924 (Ky.1997).

2. Overruled on other grounds by *Stopher v. Conliffe*, 170 S.W.3d 307 (Ky.2005).

evidentiary hearing. This appeal followed as a matter of right.

## II. PROCEDURAL DEFAULT

While the trial court did ultimately address Appellant's motion on the merits, it also concluded that Appellant had procedurally defaulted upon his claim for relief because his present motion, based upon the Nixon findings, was filed more than twenty years after the trial, and because the motion "is a successive 60.02 motion."

■ Relief may be granted under CR 60.02(f) for any reason of an extraordinary nature justifying relief. However, a CR 60.02(f) motion must be made "within a reasonable time." See CR 60.02; *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky.1983). An evidentiary hearing is not required to assess the reasonable time restriction inherent in CR 60.02 motions because this determination is left to the discretion of the trial court. *Gross* at 858. In consideration that two decades passed between the conclusion of the trial and Appellant's filing of his present CR 60.02 motion, we are constrained to conclude that the trial court did not abuse its discretion in concluding that the present motion was not brought within a "reasonable time." See *Stoker v. Commonwealth*, 289 S.W.3d 592 (Ky.App.2009) (trial court properly denied Appellant's CR 60.02 motion, his second post-conviction motion, which was brought approximately eighteen years after his conviction).

■ Similarly, CR 60.02 does not permit successive post-judgment motions, and the rule may be utilized only in extraordinary situations when relief is not available on direct appeal or under RCr 11.42. *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky.1997). That is, CR 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could reasonably have been presented by direct appeal or an RCr 11.42 proceeding. *Id.* Indeed, RCr 11.42(3) makes clear that the movant shall, in his RCr 11.42 petition, state all grounds for holding the sentence invalid of which the movant has knowledge.[3] Thus, final disposition of a movant's RCr 11.42 motion shall conclude all issues which could reasonably have been presented in the same proceeding. *Gross*, 648 S.W.2d 853; see also *Shepherd v. Commonwealth*, 477 S.W.2d 798, 799 (Ky.1972) ("this court will not review matters which have been or should have been raised and reviewed in prior motions to vacate."); *Gross*, 648 S.W.2d at 856 (CR 60.02 was never meant to be used as just another vehicle to revisit issues that should have been included or could have been included in prior requests for relief. Nor is it intended to be used as a method of gaining yet another chance to relitigate previously determined issues.). According to the trial court's calculations, in addition to his direct appeal and RCr 11.42 petition (and federal habeas corpus proceeding), Appellant has filed five prior 60.02 motions. Accordingly, the trial court did not abuse its discretion in concluding that Appellant's present filing is an impermissible successive CR 60.02 motion.

---

**3.** In fact, Foley did raise the ballistics expert issue in his RCr 11.42 proceeding, wherein the issue is discussed as follows: "Foley contends that a ballistics expert was necessary to prove that he did not kill [Lynn] Vaughn and only shot at Rodney Vaughn in self-defense. He does not have an affidavit from any ballistics expert stating this proposition. There is no showing that the one expert he contacted could change the Foley verdict.... It was not error for the trial judge to deny motions for funds for experts because those experts were not reasonably necessary." *Foley*, 17 S.W.3d at 887. This further confirms that this is an impermissible successive post-conviction filing.

Nevertheless, despite these critical procedural flaws in his present petition for relief, Appellant argues that since the 1993 verdict he has diligently pursued access to a firearms expert at every stage of his various challenges to his conviction and sentence. Indeed, Appellant devotes a significant portion of his argument detailing his efforts to obtain funding to retain an expert during the years since his trial, and he argues that he was eventually able to obtain the funds and retain an expert only through friends, family and strangers aid. The Commonwealth responds that Appellant has not shown good cause for his delay in bringing forth expert forensic firearm testimony and, if nothing else, should have "passed the hat sooner" so as not to violate our unreasonable delay rules.

■ Appellant is, in substance, making a claim for equitable tolling such that his delay in pursuing Nixon's forensic theories should be excused. In *Roach v. Commonwealth*, 384 S.W.3d 131, 139 (Ky.2012), we recently adopted the United States Supreme Court formulation for evaluating equitable tolling claims as expressed in *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). Under this test, "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649, 130 S.Ct. 2549, (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)).

While we have grave doubts that Appellant has met this high standard, nevertheless, rather than engage in a lengthy examination of his long and detailed equitable tolling claim, and because the trial court did likewise, we will address Appellant's arguments on the merits.

## III. CR 60.02(B) AND CR 60.02(F)

We first consider Appellant's claims under CR 60.02(b), a rule that permits relief based upon "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02[.]" Appellant may not avail himself of this rule because CR 60.02 explicitly requires claims under that subsection to be brought "not more than one year after the judgment, order, or proceeding was entered or taken[.]" CR 60.02. Accordingly, if Appellant is entitled to relief under CR 60.02, it must be pursuant to CR 60.02(f).

■ CR 60.02(f) permits a claim for relief for "any other reason of an extraordinary nature justifying relief." [4] The burden of proof in a CR 60.02 proceeding falls squarely on the movant to "affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief." *McQueen*, 948 S.W.2d at 416 (citing *Gross*, 648 S.W.2d at 856). To justify relief, the movant must specifically present facts which render the "original trial tantamount to none at all." *Brown v. Common-*

---

4. Generally, CR 60.02(f) stands in the place of the ancient writ of *coram nobis*. To have a judgment set aside in a *coram nobis* proceeding, a petitioner had to convince the court that "the real facts as later presented on application for the writ, rendered the original trial tantamount to none at all, and [enforcement of] the judgment as rendered would be an absolute denial of justice and analogous to the taking of life or property without due process of law." *Jones v. Commonwealth,* 269 Ky. 779, 108 S.W.2d 816, 817 (1937) (overruled on other grounds by *Smith v. Buchanan*, 291 Ky. 44, 163 S.W.2d 5 (1942)); *Gross*, 648 S.W.2d at 855 (Ky.1983). In *Gross*, we further made it clear that Rule 60.02 did not extend the scope of remedies available under *coram nobis* or add new grounds of relief. *Gross*, 648 S.W.2d at 856; see also *Brown v. Commonwealth*, 932 S.W.2d 359, 361–62 (Ky.1996).

*wealth*, 932 S.W.2d 359, 361 (Ky.1996). Rule 60.02(f) "may be invoked only under the most unusual circumstances[.]" *Howard v. Commonwealth*, 364 S.W.2d 809, 810 (1963); see also *Cawood v. Cawood*, 329 S.W.2d 569 (1959). Furthermore, and perhaps most importantly for our present purposes, "in order for newly discovered evidence to support a motion for new trial it must be 'of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would probably change the result if a new trial should be granted.'" *Jennings v. Commonwealth*, 380 S.W.2d 284, 285–86 (Ky. 1964) (quoting *Ferguson v. Commonwealth*, 373 S.W.2d 729, 730 (Ky.1963)). We review the denial of a CR 60.02 motion under an abuse of discretion standard. *Brown*, 932 S.W.2d at 361. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999) (citing 5 Am. Jur.2d Appellate Review § 695 (1995)). Therefore, we will affirm the lower court's decision unless there is a showing of some "flagrant miscarriage of justice." *Gross*, 648 S.W.2d at 858.

Nixon's findings and conclusions are set out in paragraph 3 of his Affidavit as follows:

a. The trajectory of the bullets that impacted the body of Rodney Vaughn most likely indicates that he was kneeling at the time he was shot. I base this conclusion on the general trend of the bullets moving downward through the body, with most of the bullets entering in the back and exiting in the front. The downward trajectory, coupled with most of the projectiles having entered Rodney's back, indicates that Rodney must have been kneeling as, had he been standing, it would have been impossible for him to lean far enough back to create those angles. The general bullet trajectory also makes it more likely that a relatively short shooter (consistent with Foley's height) was standing.

b. Rodney's injuries are consistent with him holding a gun at the time he was shot. The general trend of the bullet trajectory from left to right through Rodney's body is consistent with him being in a Weaver stance at the time he was shot. In this stance the left-side of the body is slightly further forward, which would, had Rodney been in this stance, account for the left to right trajectory of the bullets. Someone who had experience firing handguns would be more likely to shoot using the popular Weaver stance.

c. Additionally, the fact that the entry wounds were high up on Rodney's body indicates the likelihood that he was holding a weapon at the time he received them. Generally, when an individual holds a gun, their arms are outstretched in front of them thereby shielding their lower torso from injury. The bullet wounds in Rodney's left arm are similarly consistent with his arms having been outstretched in front of him, as though he was holding a weapon, when he was shot. The trajectory of the bullets that impacted Rodney, particularly those which indicate he was most likely on his knees and leaning back, would be consistent with him shooting at Lynn Vaughn while Robert Foley shot Rodney.

d. At least one of the bullet wounds to Lynn Vaughn was consistent with Robert Foley's version of events, wherein Rodney Vaughn shot Lynn, while Lynn was charging towards him. The slight downward angle of the bullet through Lynn's body is consistent with him leaning forward at the time he was shot. The bullet to the back of Lynn's head is similarly consistent with Robert Foley's

version of events that Ronnie Dugger fired a shot into the back of Lynn's head while he was lying on the floor. The slightly upward angle of the shot is consistent with someone firing from close range to the back of the head.

e. The bullet holes in the wall of the living room are also consistent with Robert Foley's version of events. The two bullets that were in the wall above the fish tank were more likely to have come from the area where Robert Foley indicated Rodney Vaughn was firing from (at Lynn Vaughn). The bullet hole in the corner of the living room was more consistent with someone firing from the general direction Robert Foley indicated Lynn Vaughn finally ended up in, than it was with someone firing from where Robert Foley was standing. Had the bullet been fired from where Robert Foley was standing, one would expect to see a shallow groove running along the wall towards the hole where the bullet gradually entered, due to the oblique angle. There was no evidence that this was the case and, consequently, the hole is consistent with someone firing from approximately where Robert Foley alleged Lynn Vaughn was standing, towards where Robert Foley alleged Rodney Vaughn was located.

▪▪▪ "Newly discovered evidence is evidence that could not have been obtained at the time of trial through the exercise of reasonable diligence." *Commonwealth v. Harris*, 250 S.W.3d 637, 642 (Ky.2008). See also *Sanders v. Commonwealth*, 339 S.W.3d 427, 437 (Ky.2011) (holding that CR 60.02 allows appeals based upon claims of error that "were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court"). Certainly, testimony in the form of an expert's opinion is "evidence" in

the literal sense. KRE 702. But an expert's opinion cannot fit the definition of "newly discovered evidence" unless it is based upon underlying facts that were not previously known and could not with reasonable diligence have been discovered. An opinion consisting simply of a reexamination and reinterpretation of previously known facts cannot be regarded as "newly discovered evidence." There would be no finality to a verdict if the facts upon which it was based were perpetually subject to whatever reanalysis might be conceived in the mind of a qualified expert witness.

▪▪ Nixon has identified no fact that was previously "unknown" and was only recently "discovered." Our examination of Nixon's report discloses that the information pertinent to Appellant's theory is not, in the traditional sense, "newly discovered evidence." Upon the exercise of "reasonable diligence," anything in his report could have been previously presented. Therefore, we cannot regard it as truly "newly discovered evidence."

Moreover, a fair examination of the report discloses an abundance of speculation, inference, and surmise. It is well established that evidentiary inferences are required to be based upon *reasonable* deductions. *Briner v. General Motors Corp.*, 461 S.W.2d 99, 102 (Ky.1970) (discussing "the inference-upon-inference principle" and limiting the use of such inferences because "it raises the specter of speculation"). Indeed, mere speculation or conjecture has never been a sufficient basis to support an evidentiary inference. See, e.g., *Sutton's Adm'r v. Louisville & N.R. Co.*, 168 Ky. 81, 181 S.W. 938, 940 (1916); *Klingenfus v. Dunaway*, 402 S.W.2d 844 (Ky.1966) (unreasonable "pyramiding of inferences is not allowable."). Many of Nixon's conclusions violate this rule. For example, from the gunshot wounds suffered by Rodney as reflected in the autopsy

report, Nixon infers, in paragraph "b" of his report, that Rodney was positioned in a "Weaver stance" at the time he was shot,[5] and from that inference, he further infers that Rodney was armed with a weapon pointing and shooting at Lynn (which conclusion Nixon further supports by inferences relating to the bullet holes in the wall), while also inferring from this data that at the same time Foley was shooting Rodney in self-protection/defense of Lynn. Such double inferences and speculation clearly violate the "reasonable inference" and "pyramiding of inferences" rules just described.

Therefore, upon consideration of the Nixon report as a whole, in juxtaposition with the strong eye-witness and circumstantial evidence presented at trial by the Commonwealth, including the effort to cover-up incriminating evidence of the crime,[6] we are not persuaded that the "new evidence" is "of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would probably change the result if a new trial should be granted." *Jennings*, 380 S.W.2d at 285–86 (quoting *Ferguson v. Commonwealth*, 373 S.W.2d 729, 730 (Ky.1963)). As such, on the merits, we are constrained to conclude that the trial court did not abuse its discretion in denying Appellant's motion for relief under CR 60.02(f).

## IV.  CR 60.03

Appellant also sought relief under CR 60.03. CR 60.03 provides that "Rule 60.02 shall not limit the power of any court to entertain an independent action to relieve a person from a judgment, order or pro-

ceeding on appropriate equitable grounds. Relief shall not be granted in an independent action if the ground of relief sought has been denied in a proceeding by motion under Rule 60.02, or would be barred because not brought in time under the provisions of that rule."

As discussed in the previous section, Appellant is not entitled to relief under CR 60.02. As such, in effect, the "relief sought [in his CR 60.03 action] has been denied in a proceeding by motion under Rule 60.02." It follows that Appellant is not entitled to relief under CR 60.03.

## V.  RCR 10.02

▮▮▮ Finally, Appellant also seeks relief pursuant to RCr 10.02. RCr 10.02 permits a trial court to grant a new trial "for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." RCr 10.02(1). Granting a new trial is within the discretion of the trial court, and such is disfavored when the grounds are newly discovered evidence which is merely cumulative or impeaching in nature. *Epperson v. Commonwealth*, 809 S.W.2d 835 (Ky.1990).

▮▮▮ We explained in *Jennings*, 380 S.W.2d at 285–86, that to warrant the setting aside of a verdict and granting a new trial, newly discovered evidence "must be of such decisive value or force that it would with reasonable certainty, change the verdict or that it would probably change the result if a new trial should be granted."

---

**5.** Inconsistently, Nixon surmises in paragraph "a" that Rodney "was kneeling at the time he was shot." The Weaver shooting stance is a standing position, not a kneeling position, with the feet positioned in a walking stance and both hands holding the firearm as the shooter takes aim and fires.

**6.** *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky.2004) (a cover-up is highly relevant, "constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself.").

For the reasons explained in Section III, we are unpersuaded that the "new evidence" is "of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would probably change the result if a new trial should be granted." *Jennings*, 380 S.W.2d at 285–86. Accordingly, the trial court did not abuse its discretion by denying Appellant's motion for relief under RCr 10.02.

## VI. CONCLUSION

For the foregoing reasons, the order of the Laurel Circuit Court denying Robert Carl Foley's motion for post-conviction relief is affirmed.

All sitting. All concur.