RENDERED: APRIL 28, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0287-DGE

COMMONWEALTH OF KENTUCKY,                                          APPELLANT
CABINET FOR HEALTH AND FAMILY
SERVICES EX REL. CHILD SUPPORT
ENFORCEMENT


                           ON REVIEW FROM COURT OF APPEALS
V.                                  NO. 2020-CA-1529
                           CLARK FAMILY COURT NO. 16-J-00311


B.N.T.;                                                           APPELLEES
AND K.S.

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**<u>REVERSING AND REMANDING</u>**

This appeal arises from an order of the Clark Family Court denying the

motion of the Commonwealth of Kentucky, Cabinet for Health and Family

Services, *ex rel.* Child Support Enforcement ("the Cabinet") to set aside an

agreed judgment regarding the paternity of a child born out of wedlock. The

Cabinet argued that the agreed judgment was void and entered due to fraud

and should be set aside pursuant to Kentucky Rules of Civil Procedure (CR)

60.02.[1] The family court determined that because the motion was not brought

---

[1] CR 60.02 states in relevant part:

On motion a court may, upon such terms as are just, relieve a party or
his legal representative from its final judgment, order, or proceeding
upon the following grounds: [. . .] (e) the judgment is void, or has been
satisfied, released, or discharged, or a prior judgment upon which it is
based has been reversed or otherwise vacated, or it is no longer equitable

within a reasonable time, it must deny the motion. The Cabinet appealed. The Court of Appeals affirmed. After careful review, we reverse and remand for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2016, K.S. ("mother") gave birth to a child. The mother and B.N.T. ("putative father") had an intimate relationship while the putative father was married to another woman and was, at the time, the Clark County Attorney. One of his official duties was to represent the Cabinet and individuals to establish paternity. Because of his intimate contact with the mother during the relevant time periods, the putative father wished to file a petition to determine whether he was the father of the child. Given the obvious ethical conflict of filing and handling the paternity action for himself through his own office, the putative father contacted the Cabinet's main child support office in Frankfort to ascertain the best method to file the paternity action. He was instructed to engage a neighboring county attorney's office to represent him.

At the putative father's request, the Cabinet, via the Montgomery County Attorney, filed a paternity complaint asserting that B.N.T. was the father of the child in Clark County in October 2016. The mother was served with the

_____

that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken.

2

complaint and did not respond. The office of the Montgomery County Attorney contacted the mother and informed her of the proceedings and her options. During her ongoing conversations with the Montgomery County Attorney's office, the mother informed the office that the putative father was not the father of the child but that her fiancé was the father. However, the fiancé has remained unnamed and enigmatic throughout the years of litigation in this case. The mother agreed to sign an order that the putative father was not the biological father of the child, but she refused to name the fiancé or produce him for genetic testing or to otherwise establish his paternity of the child. Both the putative father and the mother signed the agreed judgment before a notary. To underscore the mystery of the fiancé as father, in his letter of transmittal of the agreed order to Special Judge Lisa Morgan, Montgomery County Attorney Kevin Cockrell stated: "The father/fiancé's name was at no time made known to my staff."

On December 27, 2016, the Clark County Family Court entered an agreed judgment which stated:

### FINDINGS OF FACT

[1] That all parties are properly before the Court.

[2] That the Defendant is the natural and biological mother of the minor child, [. . .] born on May 17, 2016 (hereinafter referred to as the "minor child") and has advised that the minor child is not the natural and biological child of the Plaintiff but said child is the natural and biological child of the Defendant's fiancé.

[3] That the Plaintiff, [B.N.T.], is not the natural and biological father of the minor child.

3

[4] That the parties hereby waive any further genetic testing to determine the paternity of the minor child and understand the impact of waiving said testing.

[5] The parties are executing this document freely and voluntarily with no undue constraint, under no duress and being fully informed of the effect of this document.

## CONCLUSIONS OF LAW

[1] That the Court has jurisdiction over the parties and the subject matter.

[2] That the Plaintiff, [B.N.T.], is not the natural and biological father of the minor child.

[3] That the Defendant's fiancé is the natural and biological father of the minor child.

[4] No further action is required for any further genetic testing and said genetic testing is hereby voluntary waived by the parties.

Based upon the foregoing Findings of Fact and Conclusions of Law, **IT IS THEREFORE AGREED, ORDERED AND ADJUDGED** as follows:

[1] That the Plaintiff, [B.N.T.], is not the natural and biological father of the minor child of the Defendant born on May 17, 2016.

[2] Pursuant to the Kentucky Rules of Civil Procedure and all other applicable law, there is no just reason for delay and this is a final and appealable judgment.[2]

On May 12, 2020, the mother, then receiving public benefits for the child, filed an application for Child Support Services. She claimed that the

---

[2] It is not lost on this Court that the agreed judgment, while generically naming a "phantom" father once, takes three opportunities to affirmatively state that B.N.T is not the father.

putative father was the biological parent of the child. This application prompted the Cabinet, through the newly elected Clark County Attorney, to initiate child support and paternity actions against the putative father. Three days later, after discovering the irregularity of the "non-paternity" agreed judgment and suspecting that fraud had been perpetrated by either the mother, the putative father, or both to acquire the 2016 agreed judgment, the Cabinet filed a motion to set it aside pursuant to CR 60.02. The motion also requested genetic testing to establish paternity and child support. Specifically, the Cabinet stated in its pretrial memorandum that:

> the Commonwealth who cannot itself walk into a courtroom, must rely on persons to execute its responsibilities. The lack of candor of child support litigants, confidential informants and the like are not party representatives of the Commonwealth such that when inaccurate representations have been made the Commonwealth becomes bound and unable to correct a fraudulent record. In fact, such as here, it is the Commonwealth whose interests were extinguished by the fraud. If, none other, the Commonwealth and its agents have a responsibility to justice and the courts to stand ready to present matters it discovers to have occurred at the hands of litigants. Here upon receiving a statement under oath that a fraud had been perpetrated on the interests of the Commonwealth to collect child support benefits a motion to hold the judgement (sic) in abeyance was made.

The Clark Family Court heard argument on the Cabinet's motion in October 2020. Counsel for the putative father argued that the motion to set aside the judgment was untimely under CR 60.02, as the child was then forty-one months old. The Clark Family Court agreed and denied the motion in November 2020. The court found that while the agreed judgment might have been based on perjured or falsified evidence—specifically, the statements made

5

to the Cabinet and sworn to in the agreed judgment by the mother that the putative father was not the natural parent of the child—CR 60.02(c) mandated that a motion to set it aside must have been brought within one year. Additionally, the court found that the agreed judgment could not be set aside pursuant to CR 60.02(d) and (f) because a motion brought under those sections must be filed within a reasonable time. Because the three- and a-half year period between the entry of the judgment and the filing of the motion was not reasonable, and because the mother knew that the putative father was the actual father from the beginning, the court found the motion to also be untimely under CR 60.02 (d) and (f).

The Cabinet appealed. The Court of Appeals affirmed and held that the trial court did not abuse its discretion in finding that the period between the agreed judgment and the motion was unreasonable. As to the Cabinet's argument that the action was a ruse to establish that the putative father was not the father, the Court of Appeals concluded that the issue was waived because the Cabinet did not request additional findings.

We discuss additional facts as necessary below.

## II. ANALYSIS

### A. The Clark County Family Court acted outside its statutory authority in adjudicating non-paternity without a corollary determination of paternity as to an identified father.

Kentucky Revised Statute (KRS) 406.021(1) governs subject matter jurisdiction and standing in paternity cases. The Clark Family Court, had jurisdiction to hear this paternity action by way of KRS 23A.100(2)(b). KRS

6

406.021(1) empowers "the mother, the putative father, child, or agency substantially contributing to the support of the child" to file a complaint in district court where "paternity may be determined." The clause "the mother, the putative father, child, or agency substantially contributing to the support of the child" dictates standing in a paternity action, i.e., who may make a request upon the "county attorney or . . . the Cabinet for Health and Family Services or its designee" to initiate the action.[3] The clause "paternity may be determined" dictates what, precisely, the court hearing the action is empowered to do, which means that this clause establishes subject matter jurisdiction.

As always, we apply our general rules of statutory interpretation, which state that when

> interpreting a statute, we have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion. As such, we must look first to the plain language of a statute and, if the language is clear, our inquiry ends. We hold fast to the rule of construction that the plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source. In other words, we assume that the Legislature meant exactly what it said, and said exactly what it meant.[4]

These statutory interpretation principles lead us to the conclusion that the language of the statute, that "paternity may be determined," is not sufficiently

---

[3] KRS 406.021.

[4] *Commonwealth v. Moore*, 545 S.W.3d 848, 851 (Ky. 2018) (internal citation omitted).

broad to shoehorn a determination of non-paternity for one putative father without a corollary, affirmative determination of paternity for a different putative father. "Paternity" means "[t]he quality, state, or condition of being a father, esp. a biological one."[5] This is an affirmative quality or state, not a negative one. In other words, had the legislature meant for courts to make a determination that someone is not a biological father absent a finding that someone else is a biological father, then it would have used the word "non-paternity," rather than "paternity." It did not. Therefore, an order only adjudicating non-paternity lacks any support from the statute that empowers courts to hear paternity actions, generally.

KRS 406.021(2) states the procedure by which a trial court must make that affirmative determination of paternity:

> (2) Paternity may be determined by the District Court when the mother and father of the child, either:
>
>> (a) Submit affidavits in which the mother states the name and Social Security number of the child's father and the father admits paternity of the child; or
>>
>> (b) Give testimony before the District Court in which the mother states the name and Social Security number of the child's father and the father admits paternity of the child.

---

[5] Black's Law Dictionary (11th ed. 2019).

As part of this procedure, KRS 406.081 states that "[t]he court, upon request of a party or on its own motion, ***shall*** order the mother, child, and putative father to submit to genetic tests."[6]  "May," of course, is permissive, whereas "shall" is mandatory.[7]  In the instant case, the Clark Family Court did not follow the mandate of either section of KRS 406.021(2).  The order did not name the father or his social security number, and no affidavits by the mother or the unidentified fiancé were offered to prove his status as the father of the child.  Nor did the Court order genetic testing to disprove or confirm that the putative father was not the father before entering such an irregular order.  When a putative father files a petition to establish paternity, unless paternity is established in another pursuant to KRS 406.021(6), the court must conduct genetic testing prior to dismissing the putative father.

Because the order was to establish non-paternity, the Clark Family Court lacked the "inherent power" to enter it without some additional factual-finding (i.e. through DNA testing) to affirmatively establish the child's actual biological father and dismiss the putative father's petition.[8]  Had the Clark Family Court simply dismissed the suit instead, then "the mother, the putative father, child, or agency substantially contributing to the support of the child" could cause the "county attorney or . . . the Cabinet for Health and Family Services or its designee" to affirmatively determine the father of the child by separate action.

---

[6] Emphasis added.

[7] KRS 446.010.

[8] *Puckett*, 621 S.W.3d. 402 at 410 (quoting *Evans v. Corporate Servs.*, 565 N.E.2d 724, 727 (1990)).

9

Because the Clark Family Court entered only an order of non-paternity when it lacked "the inherent power to enter the particular judgment or order," and thereby acted without subject matter jurisdiction, that judgment is void.[9]  It is a wholly unenforceable paternity judgment.  The unnamed fiancé is not a party to the action and there is no person named from whom to collect child support owed to either the mother or to the Cabinet.

It is important to note that, generally, a district or family court *does* have the ability to adjudicate paternity actions.  However, whether this case began as an attempt to establish or to obscure the paternity of the child, the agreed judgment cannot stand.

## B. Because the judgment is void, CR 60.02(e) mandates that it must be set aside.

Though the trial court found that perjury or falsified evidence may have been offered and may have been determinative of the judgment from which the Cabinet sought relief, it determined that its ability to act was limited by the timing of the motion.  Because the one-year period had lapsed, and the motion was not brought within a reasonable time, the trial court denied the Cabinet's motion.

Several principles typically guide this Court's review of a trial court's denial of a CR 60.02 motion.  Ultimately, "CR 60.02, is a safety valve, error correcting device for trial courts."[10]  It is firmly within the "sound discretion of

---

[9] *Id.*

[10] *Kurtsinger v. Bd. of Trs. of Ky. Ret. Sys.*, 90 S.W.3d 454, 456 (Ky. 2002).

10

the [trial] court" whether to grant relief pursuant to CR 60.02 (a)-(d) and (f), "and the exercise of that discretion will not be disturbed on appeal except for abuse."[11]  "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[12]  However, a "void judgment is a legal nullity, and a court has no discretion in determining whether it should be set aside."[13]  Put another way, "[w]hile trial courts are afforded discretion to address what constitutes a reasonable time under CR 60.02, the law is clear that void judgments are 'not entitled to any respect or deference by the courts.'"[14]  This is the case, because "[a] void judgment cannot gain validity simply" due to the passage of time.[15]

In the instant case, the trial court used its discretion to determine that the judgment could not be set aside because it had not been filed within a reasonable time.  Because we hold that the judgment was void *ab initio* on subject matter jurisdiction grounds, we need not address the other subsections of CR 60.02 relief.

Though it is not necessary to this decision, this Court finds it prudent to address one additional point.  This case, at its core, has been an impermissible

---

[11] *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996) (quoting *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)).

[12] *Foley v. Commonwealth,* 425 S.W.3d 880, 886 (Ky. 2014) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (internal citations omitted)).

[13] *Foremost Ins. Co. v. Whitaker*, 892 S.W.2d 607, 610 (Ky. App. 1995).

[14] *Phon v. Commonwealth*, 545 S.W.3d 284, 306–07 (Ky. 2018) (quoting *Soileau v. Bowman*, 382 S.W.3d 888, 890 (Ky. App. 2012)).

[15] *Phon,* 545 S.W.3d at 307.

use of the court system and the services that the Cabinet provides to mothers and children who are entitled to support from a child's biological father. These services are provided at the expense of the taxpayer for the support of the families of Kentucky, so that all children in the Commonwealth have the benefit of fair financial contributions from two parents, rather than financial support from one parent and the taxpayer. The import of this case, generally, is underscored by the public policy determinations of the legislature, enumerated through statute, that ultimately guide our decision.

The Court of Appeals, faced with an analogous, but opposite, situation where a man who was not the biological father as determined by genetic testing was adjudicated to be the child's father, artfully articulated this point in *Crowder v. Commonwealth ex rel. Gregory*, stating:

> Justice is the court's constant destination, relentlessly pursued.
>
> [. . .]
>
> That an injustice such as this, if allowed, would have great potential for proliferation is self-evident. H.G. would have a legal claim to a portion of Crowder's estate under our laws of descent and distribution, which could unjustly diminish the inheritance of Crowder's true children. H.G. could attempt to draw benefits from Crowder's social security account equally with Crowder's true children. The mother of H.G. has been receiving public assistance for his support. Yet the Commonwealth could never seek reimbursement legally due from H.G.'s father because a stranger to H.G. would be deemed his father, and he would be relieved from payment of support. It is not the least among our concerns that it would be unfair to H.G., in this case vis a vis an adoption, to decree a man to be his father who bears no relation to him. These are but a few of the considerations which make the continued

12

application of the paternity judgment against Crowder unacceptable.[16]

The same public policy concerns permeate this case. If a biological father were able to bring an action for non-paternity and acquire an order stating as much absent the evidence mandated by statute, then an innumerable number of children born in the Commonwealth would not be entitled to inherit, receive benefits from social security, or know who their genetic relatives were. Further, the Commonwealth would not be able to seek reimbursement legally due from a child's true biological father, because the order adjudicating the child's true father as not-the-father would be preclusive to him. So, not only do the law and the Rules of Civil Procedure mandate that the judgment be void, but that mandate is supported by the strong public policy of the Commonwealth that children are entitled to the support of both parents, rather than one parent and the taxpayers vis-à-vis the Cabinet.

In all cases in family court, the paramount consideration should be the child. "The welfare of a child, its life, health, and moral and intellectual being, should be, and are, kept well in view by the courts in determining its legal disposition in litigations over it."[17] The putative father and the mother have done a disservice to this child by taking the path they chose in this litigation. Keeping the child's welfare central to our consideration, we cannot strongly enough underscore how her interest in knowing both of her biological parents

---

[16] 745 S.W.2d 149, 151 (Ky. App. 1988).

[17] *Stapleton v. Poynter*, 62 S.W. 730, 731 (Ky. 1901).

has been disregarded. Respecting that innate interest, we remand to the Clark Family Court with instruction to complete genetic testing forthwith. Should "the paternity index, as calculated by the experts qualified as examiners of genetic markers" indicate "that the putative father is not the father of the child, the question of paternity shall be resolved accordingly," and this matter should be dismissed.[18] The putative father has previously averred that he is the father and with current genetic testing that question can and should be answered once and for all time.

### III. CONCLUSION

Based on the foregoing, we reverse the Court of Appeals, and hold that the underlying judgment in this action is void for lack of subject matter jurisdiction. We reverse and remand with instruction to resume the proceedings in a manner consistent with this opinion.

All sitting. All concur.


COUNSEL FOR APPELLANT:

William D. Elkins
Clark County Attorney

COUNSEL FOR APPELLEE:

Anita M. Britton
Britton Johnson, PLLC

---

[18] KRS 406.111.

14