RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1098-MR

SALEM NAGDY            APPELLANT

v.        APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCH PERRY, JUDGE
ACTION NO. 16-CR-003353

COMMONWEALTH OF KENTUCKY          APPELLEE

AND

NO. 2021-CA-1099-MR

SALEM NAGDY            APPELLANT

v.        APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCH PERRY, JUDGE
ACTION NO. 18-CR-000872

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION<br>AFFIRMING

** ** ** ** **

BEFORE:  ACREE, COMBS, AND ECKERLE, JUDGES.

ACREE, JUDGE:  Salem Nagdy appeals the Jefferson Circuit Court's July 27, 2021 order denying both (1) his CR[1] 60.02 motion to vacate the judgment, and (2) his motion to disqualify the circuit judge.  We affirm.

## BACKGROUND

Following a jury trial, Nagdy was convicted of kidnapping, assault, stalking, and eavesdropping, and sentenced to prison for thirty-one years.  *Nagdy v. Commonwealth*, No. 2018-SC-000565-MR, 2020 WL 1846882, at *1 (Ky. Mar. 26, 2020) (*Nagdy I*).  He appealed directly to the Kentucky Supreme Court, which rendered a *per curiam* opinion affirming the convictions.  *Id.*

*Nagdy I* includes a full factual account.  The following is a relevant summary; quotations are attributable to that opinion.

Nagdy's victim is his ex-wife, to whom the Supreme Court referred by the pseudonym, Mary.  Their divorce decree included "a protective order against Nagdy requiring him to remain 300 feet away from Mary for a year."

---

[1] Kentucky Rules of Civil Procedure.

"Nagdy refused to accept the legitimacy of the divorce decree" and when he learned Mary "was in a new relationship[,]" his texts to her "became increasingly more threatening." Eventually he violated the protective order and confronted Mary on more than one occasion.

The day he committed his crimes, he went to Mary's home and hid in the back of her van. As she commuted to work, he revealed himself. She pulled the vehicle to the shoulder. "Nagdy then stunned her with a flashlight that had a stun gun feature . . . [and] began beating her over the head with the flashlight" causing major head trauma. He took control of the vehicle and drove to a local hospital where both were treated, Mary for obvious reasons, and Nagdy because "he was screaming, crying, breathing fast, sweating, and was covered in blood." Nagdy told hospital staff they had been in an auto accident.

However, "after the staff observed a large amount of blood on the interior of the car, but no exterior damage, they called the police." Officers arrived and began investigating. Nagdy was soon arrested.

Before proceeding to trial, Nagdy's court-appointed counsel moved to suppress three audio recordings made during the investigation. The circuit court, Judge Mitch Perry, entered an order denying the motion. The Supreme Court reviewed that order as part of Nagdy's direct appeal. Again, we refer the reader to the full analysis in *Nagdy I*. It is enough to say the Supreme Court engaged in a

thorough review of Nagdy's claims, including that he was recorded before being mirandized and after being medicated. Still, the Court found "no error in this ruling. . . . [E]vidence is more than sufficient to support the trial court's determination that Nagdy gave his statements freely, knowingly, and voluntarily."

On July 1, 2020, after the Supreme Court affirmed his convictions, Nagdy moved the circuit court pursuant to CR 60.02(b), (c), and (f) alleging newly discovered evidence justified vacating the convictions. Accompanying the CR 60.02 motion was Nagdy's motion to disqualify Judge Perry. Judge Perry denied both motions. We review the orders denying in that sequence.

*Order denying CR 60.02 relief.*

Before proceeding to the substance of the CR 60.02 motion, we note the Commonwealth's persuasive argument that Nagdy's motion, filed nearly two years after his convictions, was untimely. Relief under CR 60.02(a), (b), or (c) "must be sought within the year even though an appeal is being prosecuted." *Meredith v. Commonwealth*, 312 S.W.2d 460, 462 (Ky. 1958). As for the catch-all provision of CR 60.02(f), it must be brought within a reasonable time after judgment and, furthermore, "relief is not available under CR 60.02(f) unless the asserted grounds for relief are not recognized under subsections (a), (b), (c), (d), or (e) of the rule." *McMurry v. McMurry*, 957 S.W.2d 731, 733 (Ky. App. 1997).

-4-

However, because this Court can readily affirm the circuit court's order denying relief on substantive grounds, we shall consider Nagdy's argument.

The evidence Nagdy claims to be newly discovered is an audio recording and his own medical record. We address each in turn.

In Nagdy's words, Judge Perry "intentionally VIOLATED RCr[2] 8.72(2),[3] and concealed 'Commonwealth Exhibit A' which was introduced into evidence during the suppression hearing . . . ." (Appellant's brief, p. 2) (emphasis in original). He also accuses the "Anonymous Justice of the Kentucky Supreme Court who prepared the Memorandum Opinion" (*Nagdy I*) of colluding with Judge Perry and the prosecutor, and of intentionally concealing "'Commonwealth Exhibit A' from other members of the Supreme Court . . . ." (Appellant's brief, p. 2.)

By his own admission then, the recording Nagdy claims is newly discovered was part of the same record considered on direct appeal when the Supreme Court concluded it was properly admitted. Nagdy's argument is self-defeating; this is not newly discovered evidence.

---

[2] Kentucky Rules of Criminal Procedure.

[3] This appears to be a transposition error as no such rule exists. We presume Nagdy intends a reference to RCr 8.27(2) which says: "**(2) Hearing.** The court shall conduct a hearing on the record and before trial on issues raised by a motion to suppress evidence. No jury and no prospective juror shall be present at any such hearing." Later in his brief, Nagdy cites correctly to RCr 8.27(2).

What Nagdy seems to be asking of this Court is that it relisten to the recording because the other "newly discovered" evidence shows he was "heavily sedated in the Emergency Room" when it was made. That takes us to what Nagdy claims is newly discovered medical evidence showing his heavy sedation.

Nagdy's evidence is an invoice for medical services he received in the emergency room on the day he kidnapped and assaulted Mary. He claims the quantity of a drugs for which he was invoiced was new proof he was "heavily sedated." There are several flaws in this argument.

First, the drugs to which Nagdy refers were administered by Dr. Christopher Krieg who testified the medications are not sedatives. Dr. Krieg's testimony was part of the record before the Supreme Court on direct appeal.

Second, "[n]ewly discovered evidence is evidence that could not have been obtained at the time of trial through the exercise of reasonable diligence." *Foley v. Commonwealth*, 425 S.W.3d 880, 887 (Ky. 2014) (internal quotation marks and citation omitted). Nagdy offers no explanation why his medical records from the day he committed his crimes were not discoverable before his trial.

Third, *Nagdy I* includes a lengthy analysis of Nagdy's medical condition and mental state when he made statements that were recorded and introduced against him. It expressly addresses Nagdy's argument "that the effects of the medicines prevented his statements to Det. May from being freely,

knowingly, and voluntarily given . . . ." *Nagdy I*, 2020 WL 1846882, at \*7.

Although the Court discussed the nature and amount of drugs administered (not the

amount Nagdy was invoiced), the focus was properly on the drugs' effect on

Nagdy, not the quantity of drugs administered.  Said, the Court:

> *More importantly*, Dr. Krieg testified that after Nagdy was given the drugs he became calm but was still alert and began cooperating with the medical examination. This was his intended effect.  Det. May similarly testified that Nagdy did not appear to be under the influence of anything.  Nagdy seemed to understand Det. May's questions, and responded with coherent, logical, and appropriate responses.  Additionally, his answers during both rounds of questioning were consistent with one another.

*Id.* at \*8 (emphasis supplied).

We conclude the circuit did not abuse its discretion when it denied

Nagdy's CR 60.02 motion.

*Order denying motion to disqualify.*

As noted, Nagdy moved for Judge Perry's disqualification on July 1,

2020.  Subsequent to Judge Perry's denial of the motion, the same issues were

addressed by the Chief Justice pursuant to KRS[4] 26A.020(1).  After noting

"Nagdy's petition, affidavit, and supplement allege additional grounds for

disqualification," the Chief Justice ruled as follows:

---

[4] Kentucky Revised Statutes.

> Upon review, it is ORDERED that [Nagdy] has failed to demonstrate . . . any disqualifying circumstances that would require the appointment of a special judge under KRS 26A.020. Accordingly, both[5] requests are denied without prejudice of any party to seek appellate review after entry of a final judgment.

*In re: Commonwealth of Kentucky v. Salem N. Nagdy*, (from the 30th Judicial Circuit, Case No. 18-CR-000872) (Ky. Sep. 30, 2021) (Minton, Chief Justice).

The circuit court's order denying Nagdy's CR 60.02 motion is the final judgment to which the Chief Justice refers, making appellate review of Judge Perry's denial of Nagdy's disqualification motion appropriate by this Court.

We have examined the record no less closely than the Chief Justice. We too conclude Nagdy failed to demonstrate any circumstances that would require Judge Perry's disqualification from hearing any aspect of this case.

## **CONCLUSION**

For the foregoing reasons, we affirm the Jefferson Circuit Court's July 27, 2021 order denying Appellant's CR 60.02 motion and his motion to disqualify.

ALL CONCUR.

---

[5] The Chief Justice referenced the similar petition Nagdy filed in *Commonwealth of Kentucky v. Nagdy*, No. 16-CR-003353 (Jefferson Cir. Ct. filed Dec. 27, 2016).

BRIEFS FOR APPELLANT:

Salem Nagdy, *pro se*
Burgin, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jeffrey A. Cross
Assistant Attorney General
Frankfort, Kentucky