RENDERED:  JULY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0956-MR

ANTONIO ELLISON												APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.					HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 09-CR-003445


COMMONWEALTH OF KENTUCKY										APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; EASTON AND A. JONES, JUDGES.

EASTON, JUDGE:  The Appellant ("Ellison"), *pro se*, appeals from an Order of

the Jefferson Circuit Court denying, without an evidentiary hearing, Ellison's latest

post-conviction motion seeking a new trial pursuant to RCr[1] 10.02, RCr 10.06, and

CR[2] 60.02(f).  Ellison claims he is entitled to a new trial based upon newly

---

[1] Kentucky Rules of Criminal Procedure.

[2] Kentucky Rules of Civil Procedure.

discovered evidence in the form of two affidavits by alleged eyewitnesses to the crime. Ellison also appeals the separate order directing rejection of future *pro se* motions challenging this conviction. Upon our review, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

This case has a long history because Ellison has filed multiple motions and appeals relating to his murder conviction. We will discuss only the most pertinent details of the case. The several preceding opinions thoroughly describe the factual and procedural history.

A jury convicted Ellison of complicity to murder for the shooting of Ricco Cunningham ("Cunningham"), who was shot twice in the face. The jury fixed Ellison's sentence at life imprisonment. The Kentucky Supreme Court affirmed his conviction. *Ellison v. Commonwealth*, No. 2013-SC-000518-MR, 2014 WL 7238821 (Ky. Dec. 18, 2014).

Ellison then filed an RCr 11.42 motion, which was denied by the circuit court. This Court affirmed. *Ellison v. Commonwealth*, No. 2016-CA-000393-MR, 2017 WL 1829717 (Ky. App. May 5, 2017). This was followed by a federal *habeas corpus* petition, which was also denied. *Ellison v. Litteral*, No. 3:18-CV-00223-GNS-RSE, 2019 WL 4794756 (W.D. Ky. May 2, 2019).

Next was Ellison's first motion for relief pursuant to CR 60.02. This was denied by the circuit court, and this Court again affirmed. *Ellison v.*

*Commonwealth*, Nos. 2021-CA-0894-MR & 2022-CA-0193-MR, 2023 WL 3261458 (Ky. App. May 5, 2023). The Kentucky Supreme Court denied discretionary review of this latest decision.

On March 26, 2024, Ellison filed another *pro se* motion seeking a new trial. On June 5, 2024, Ellison, through counsel, filed a subsequent motion for an evidentiary hearing on this latest *pro se* motion. The Commonwealth objected, and the circuit court summarily denied both motions. In its response to Ellison's motions, the Commonwealth additionally moved the circuit court to "summarily reject any similarly frivolous *pro se* motions which Ellison might submit in the future."[3] The circuit court granted this further relief. This appeal follows.

## STANDARD OF REVIEW

A trial court's ruling on a motion for new trial is reviewed for an abuse of discretion. *Taylor v. Commonwealth*, 175 S.W.3d 68, 71 (Ky. 2005). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted). This same standard applies to a CR 60.02 motion generally. *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014).

---

[3] Response Opposing Motions for New Trial and Evidentiary Hearing, Record at 584.

## ANALYSIS

Ellison argues he is entitled to a new trial based on newly discovered evidence. He claims two eyewitnesses, Michelle Griffith ("Griffith")[4] and Jeffery Bell ("Bell"), signed affidavits in March 2024 saying they were eyewitnesses to the shooting that occurred in 2009. Both state Ellison was not the person who shot Cunningham.

Griffith explains that she was a customer of Cunningham who sold cocaine. She says she was in a car in the same alley where the shooting occurred. Bell was supposedly with her. They say they saw Cunningham interacting with someone in a green car (the same color car from which Ellison would be seen fleeing just after the shooting). Griffith claims she got a good look at the shooter, and she is "a hundred percent certain that it was not Antonio Ellison." Bell echoes Griffith in his affidavit. Griffith also swears that she contacted a police detective and relayed this information prior to Ellison's trial. The detective supposedly rejected her report indicating that he was sure of the identification of Ellison by others.

The evidence of record contradicts the story offered by these belated witnesses. The police were on the scene within minutes and gave chase to the

---

[4] The unidentified preparer of the affidavit apparently misspelled "Griffth" throughout the affidavit.

green car from which Ellison later admitted he had fled during the chase. Two witnesses came out from their residences as soon as they heard the gunshots. No one ever reported the presence of another car in the alley. If the second car had been there for a sufficient time to see the shooting and give these belated witnesses a chance to clearly see the face of the shooter, there is no explanation for no one ever reporting having seen the second car.

Ellison further claims Griffith's questionable report to the detective was never provided to him or his counsel.[5] Ellison presented a self-defense claim at trial. He now argues that had he and his counsel known of these witnesses, they would have pursued a different defense strategy. He also regurgitates alternate explanations he has previously given as to why his clothing was in and his DNA on the green car. None of this overcomes Ellison's testimony that he ran from the green car and discarded his shirt with his DNA on it, which two witnesses saw him do.

To excuse the fifteen years it took for these statements to be gathered, the affiants explain that they saw a posting on social media about Ellison's

---

[5] Ellison claims a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Ellison could establish an actionable *Brady* violation here only "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S. Ct. 1555, 1566, 131 L. Ed. 2d 490 (1995) (footnote omitted). Regardless of any possible merit to the claim of a *Brady* violation, such a claim is not exempted from the duty of a defendant to use diligence in discovering it and asserting it within a reasonable time as well as the separate duty not to repeat CR 60.02 motions.

birthday. They then contacted the person (not identified in the affidavit) who made the posting to let them know Ellison was not the shooter. Griffith said that she was afraid to contact the police, even though she supposedly had contacted the detective just after the crime, and she never followed up with anyone about what she had seen.

Ellison was convicted of *complicity* in Cunningham's murder. Based on the evidence of record, others were without question involved in the events of that day leading to the murder. With a complicity theory of responsibility, it was not necessary to prove that Ellison was the shooter, even though Ellison swore under oath that he was the one who shot Cunningham.

Ellison's testimony at trial is a hurdle he cannot clear in his effort to now change his tune to claim he was not the shooter. As previously stated, Ellison presented a claim of self-defense. Ellison himself testified that he shot Cunningham in self-defense. He testified that Cunningham pulled a gun on him. Ellison claimed the gun discharged twice accidentally during the struggle between the two men. Ellison unsuccessfully asked the jury to believe it was just a fluke that both shots were directed at the victim's face.

Essentially, Ellison is asking this Court to grant him relief despite his own perjury. This we cannot do. No person has a right to commit perjury. *Nix v. Whiteside*, 475 U.S. 157, 173, 106 S. Ct. 988, 997, 89 L. Ed. 2d 123 (1986). And

-6-

even "perjury on advice of counsel is not a ground for a new trial." *Payne v. Commonwealth*, 79 S.W.2d 204, 206 (Ky. 1935).

The circuit court also ruled Ellison's motion was time-barred. We agree. RCr 10.06 states:

> (1) The motion for a new trial shall be served not later than five (5) days after return of the verdict. A motion for a new trial based upon the ground of newly discovered evidence shall be made within one (1) year after the entry of the judgment or at a later time if the court for good cause so permits.

RCr 10.02 also has a time limitation. CR 60.02 contains the specific one-year provision regarding relief for a judgment based on newly discovered evidence. Ellison claims that this case shows "good cause" for an untimely motion and that CR 60.02(f) should be applied.

His motion for a new trial was filed more than a decade after his conviction and fifteen years after the murder was committed. This gap of well over a decade cannot be considered "reasonable," especially in light of the other obvious issues with this purported "new evidence."[6] Furthermore, this is Ellison's

---

[6] There are truly rare situations when newly offered evidence may be considered under CR 60.02(f) after the one-year limit in that rule such as those seen in *Commonwealth v. Graham*, 586 S.W.3d 754 (Ky. 2019). No such circumstances are presented in this case. Due diligence to find the evidence now offered by Ellison has not been shown. Furthermore, the Commonwealth waived the bar presented by a prior CR 60.02 motion in *Graham*. That is not the case here. Ellison was required to search for and find this evidence in a timely manner and present it in his first CR 60.02 motion.

second 60.02 motion, and "CR 60.02 does not permit successive post-judgment motions." *Foley*, *supra*, at 884.

Also, "newly discovered evidence which merely impeaches or is collateral is insufficient unless it impeaches the only material witness in the case." *Foley v. Commonwealth*, 55 S.W.3d 809, 814 (Ky. 2000). Such evidence "is generally disfavored as grounds for granting a new trial. The evidence must be of such decisive value or force that it would, with reasonable certainty, change the verdict or that it would probably change the result if a new trial should be granted." *Id.* (internal quotation marks and citations omitted). A new trial with these lately created affidavit statements would not erase Ellison's confession of being the shooter.

The evidence against Ellison presented at trial was overwhelming, putting him in the alley where the shooting took place. The most significant piece of evidence that established him as the shooter came from Ellison himself. In addition to Ellison's confession as the shooter, there was physical evidence identifying Ellison as being on the scene and involved with others in the fatal encounter with Cunningham.

Much of the evidence offered against Ellison was his behavior *after* the shooting, including his flight from the scene and an intercepted letter Ellison wrote which asked a friend to "handle" an eyewitness who had identified Ellison.

At trial, Ellison insisted that this direction to someone outside the jail was just a request to talk to the witness, not kill him. Eventually, Ellison would be convicted of witness tampering relating to these events after a jury trial.[7] That much later conviction is presently on appeal.[8]

The Jefferson Circuit Court did not abuse its discretion in denying Ellison's latest post-conviction motion. This brings us to Ellison's second argument on appeal. He asserts the circuit court abused its discretion in its Order, which stated:

> IT IS HEREBY ORDERED that Ellison's motions are DENIED. This matter is struck from the Court's active docket. The Clerk's Office shall not accept or docket any papers which Ellison submits pro se in this case going forward. Any future requests by Ellison to proceed in forma pauperis with collateral attacks of his conviction or sentence in this case will be summarily denied.[9]

In *Cardwell v. Commonwealth*, 354 S.W.3d 582, 585 (Ky. App. 2011), this Court sanctioned the Appellant for filing frivolous, successive post-conviction motions. This Court directed the circuit court to deny any future requests to proceed *pro se* and *in forma pauperis* to file any further collateral attacks on his conviction. *Id. See also Berry v. Commonwealth*, 624 S.W.3d 119

---

[7] Jefferson Circuit Court, Case No. 11-CR-000636.

[8] Case No. 2024-CA-1000-MR. That appeal is a separate matter which is presently in the briefing process, and we express no opinion about that matter.

[9] Circuit Court's Order of July 22, 2024, Record at Page 597.

(Ky. App. 2021). Prior opinions in this case have instructed Ellison that arguments made previously cannot be repeated. Post-conviction motions must include all arguments that can be made. Arguments cannot be parsed out over decades and made by successive motions.

The wording of the circuit court's order is consistent with our precedents and was not an abuse of discretion. The order does not cut off all access to the court. It simply prohibits *pro se* and *in forma pauperis* filings attacking this conviction. Should there be any legitimate matter which might arise, an attorney subject to CR 11 oversight can file those matters for Ellison.

## CONCLUSION

The circuit court did not abuse its discretion when it denied Ellison's motion for a new trial without an evidentiary hearing. With the prior history of post-judgment motions in this case and because of the lack of merit in Ellison's second CR 60.02 motion, the circuit court did not abuse its discretion in not permitting future *pro se* and *in forma pauperis* pleadings by Ellison. The Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

-10-

BRIEFS FOR APPELLANT:

Antonio Ellison, *pro se*
Wheelwright, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky