RENDERED: NOVEMBER 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0661-MR

TOMA WASHINGTON APPELLANT

APPEAL FROM FRANKLIN CIRCUIT COURT
v.  HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 16-CR-00413

COMMONWEALTH OF KENTUCKY APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

CLAYTON, CHIEF JUDGE: Toma[1] Washington entered an *Alford*[2] plea of guilty

to manslaughter in the first degree and possession of a handgun by a convicted

---

[1] We will refer to the appellant by his first name in order to avoid confusion with other individuals mentioned in this Opinion who share the same last name.

[2] A plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), "permits a conviction without requiring an admission of guilt and while permitting a

felon. He thereafter moved to set aside his conviction pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42 and Kentucky Rules of Civil Procedure (CR) 60.02, alleging discovery violations by the Commonwealth and ineffective assistance of counsel. The Franklin Circuit Court denied his motion in a series of orders, entered on March 1, 2021, April 9, 2021, and May 17, 2021, from which Toma now appeals. Having reviewed the record and applicable law, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2016, Jaleesa Robinson, Toma's girlfriend and the mother of one of his children, was shot and killed. Toma had spent the earlier part of that day with his wife, Whitney. According to Whitney, he was drinking and using marijuana. Toma, Whitney, and their child were driving around Frankfort when he and Whitney got into an argument. Whitney claimed Toma pulled out a pistol, stuck it in her side, and pulled the trigger, but the gun did not discharge. Whitney drove Toma to the home of his relative, Brennan Washington, and dropped him off there.

Toma and Brennan drove to the west side of Frankfort to get some liquor. On the return trip, Toma called Jaleesa to meet them at Brennan's. When they returned to Brennan's home, Jaleesa was parked in the driveway. Toma got

protestation of innocence." *Wilfong v. Commonwealth*, 175 S.W.3d 84, 103 (Ky. App. 2004). "The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty." *Id.* at 102.

into the passenger seat of Jaleesa's SUV and Brennan sat in the back seat behind Jaleesa. According to Brennan, Jaleesa was looking at Toma's phone and unblocking herself on Facebook. Toma pointed his pistol at Jaleesa and fired. Brennan jumped out and ran to his house. He saw Jaleesa get out of her vehicle, get back in, and drive away. He did not realize she had been shot.

Jaleesa drove herself to a nearby convenience store, where she called 911 to report she had been shot. The dispatcher asked her twice who had shot her and both times she replied, "I don't know." Jaleesa did not identify the shooter to the police officer or to the fire and EMS workers who arrived at the scene. Jaleesa was taken to the hospital where she later died.

The day after the shooting, Toma went to the police station where he was arrested. He told the detective who interviewed him that he had no reason to shoot Jaleesa. He admitted that his infidelity had caused a conflict between Whitney and Jaleesa, and he claimed that the week before, Whitney had chased him and Jaleesa with a gun.

On December 20, 2016, Toma was indicted for murder, being a convicted felon in possession of a handgun, and two counts of being a persistent felony offender in the first degree (PFO I). He was separately indicted for first-degree wanton endangerment for the incident in which he pointed a gun at Whitney and pulled the trigger. Toma retained private counsel.

On January 4, 2017, the trial court entered a discovery order requiring the Commonwealth to provide the defense with the materials set forth in RCr 7.24(1) and (2) and any exculpatory evidence known to the Commonwealth. The order also required the Commonwealth to produce witness statements within ten days of trial, in compliance with RCr 7.26, which requires the production of such statements to be made at least forty-eight hours before trial.

The Commonwealth filed hundreds of documents on February 14, 2017. A dispute thereafter arose regarding whether the Commonwealth had provided full discovery. On July 11, 2017, the defense filed a motion to compel discovery, informing the trial court that it had received discoverable police reports only after a meeting with a police detective and that the defense did not believe it had received all discovery as ordered by the court, including police reports, interviews with witnesses, and exculpatory evidence. The trial court conducted a hearing and then ordered an *in camera* review of portions of the Commonwealth's file to determine whether any additional materials should be disclosed to the defense.

After its review, the trial court entered an order on August 22, 2017, finding the documents at issue were properly excluded from production under RCr 7.24(2). The trial court's order stated that the Commonwealth divided the documents into five separate groups. Of the five groups, three were previously

-4-

provided to the defense in the Commonwealth's initial discovery production, "the only caveat being that the officers' mental impressions and memoranda prepared in anticipation of trial are not discoverable." The two remaining groups consisted of witness statements and memoranda generated by the police in their investigations, which the trial court ruled were excluded by RCr 7.24(2). The order reiterated that statements of witnesses were not to be provided to the defendant until ten days before trial, as provided in its initial discovery order. The trial court sealed the documents it had reviewed and placed them in the record in accordance with RCr 7.24(8).

Toma's trial was scheduled for January 22, 2018. On December 21, 2017, the Commonwealth provided recordings of interviews conducted with seventeen individuals and on January 8, 2018, the Commonwealth provided recordings of interviews with Whitney Washington and Brennan Washington.

On January 10, 2018, Toma filed a motion to continue his trial date, informing the court that settlement negotiations were occurring between the parties. The motion also stated that defense counsel had just received twenty DVDs of witness statements from the Commonwealth, including the statements of two critical witnesses, and needed more time to find and interview witnesses and to conduct a forensic evaluation of the evidence. The motion requested an additional sixty days to investigate and prepare for trial. At a hearing on January 12, 2018,

defense counsel informed the court that plea negotiations were ongoing.  The trial court took the motion for a continuance under advisement.

On January 16, 2018, the Commonwealth made an offer to amend the murder charge to manslaughter in the first degree, to keep the charge of possession of a handgun by a convicted felon, to dismiss the two counts of PFO I, and to dismiss the separate wanton endangerment case involving Whitney.  The Commonwealth offered to recommend a total sentence of nineteen years' imprisonment.

On January 18, 2018, following a properly conducted *Boykin*[3] colloquy, Toma entered an *Alford* plea in accordance with the terms of the plea agreement and was sentenced to eleven years for the first-degree manslaughter charge and eight years for convicted felon in possession of a handgun, to be run consecutively.

On January 17, 2021, Toma filed a motion to set aside his conviction pursuant to both RCr 11.42 and CR 60.02 as well as Sections 11 and 14 of the Kentucky Constitution, and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  He alleged that the Commonwealth had committed discovery violations and failed to turn over exculpatory and impeachment materials as required under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.

---

[3] *Boykin v. Alabama*, 395 U.S. 238, 28 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

Ed. 2d 215 (1963). He raised a claim of ineffective assistance of counsel, based on a failure to investigate, and also sought to disqualify the Commonwealth attorney and the trial judge from presiding over the post-conviction proceedings; and to inspect the previously sealed documents and make them part of the post-conviction record.

On March 1, 2021, the trial court entered a lengthy opinion and order, denying the motion with the exception of reserving some documents for further investigation in an evidentiary hearing. Toma filed a motion to enlarge and continue the evidentiary hearing. The trial court denied the motion and held the evidentiary hearing on April 14, 2021, within the parameters originally delineated in its March 1, 2021 order. Detective Scott Morgan and Detective Josh Baker, who investigated Jaleesa's murder, both testified. The trial court entered a supplemental order on May 17, 2021, denying the motion to set aside conviction. This appeal by Toma followed. Further facts will be set forth below as necessary.

## ANALYSIS

### I. CR 60.02 Claims

The basis of Toma's claims for relief under CR 60.02 is that the Commonwealth withheld evidence in violation of RCr 7.24 and *Brady*, *supra*. CR 60.02 states:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final

judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

To the extent that Toma's arguments are founded on claims of newly discovered evidence under section (b) of the Rule, they are time-barred by the terms of the Rule itself because he filed his CR 60.02 motion almost three years after the entry of the final judgment. Toma concedes that his claim is founded on newly discovered evidence but argues that it is of an extraordinary nature and thus within the purview of CR 60.02(f). He contends that due to the Commonwealth's failure to disclose the police department's documents, his only avenue for discovery of these materials was by an open records request after the finality of the case. Two years elapsed between the entry of the final judgment and Toma's open records request. Toma does not account for the lengthy delay in seeking the records or explain why he was unable to file his motion within a year of his

conviction.  "[S]ubsection (f) was not intended to provide a means for evading the strictures of the other subsections."  *Alliant Hospitals, Inc. v. Benham*, 105 S.W.3d 473, 479 (Ky. App. 2003).  "CR 60.02(f) is a catch-all provision that encompasses those grounds . . . that are not otherwise set forth in the rule."  *Commonwealth v. Spaulding*, 991 S.W.2d 651, 655 (Ky. 1999).

Although the trial court held that the CR 60.02 motion was untimely under section (b), it nonetheless addressed the substance of Toma's allegations under section (f).  We will do likewise, in accordance with *Foley v. Commonwealth*, 425 S.W.3d 880, 885 (Ky. 2014), which addressed the appellant's arguments on the merits despite having "grave doubts" that he had met the standard for equitable tolling of the deadline for CR 60.02 relief.

"[I]n order for newly discovered evidence to support a motion for new trial it must be of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would probably change the result if a new trial should be granted."  *Id*. at 886 (internal quotation marks and citation omitted).

We review the denial of a CR 60.02 motion for an abuse of discretion. *Partin v. Commonwealth*, 337 S.W.3d 639, 640 (Ky. App. 2010), *overruled on other grounds by Chestnut v. Commonwealth*, 250 S.W.3d 288 (Ky. 2008).  The test for abuse of discretion is whether the trial court's decision was "arbitrary,

unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted). Absent a "flagrant miscarriage of justice[,]" we will affirm the trial court. *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983).

Toma argues that the trial court abused its discretion in finding what he claims are "official police reports" to be memoranda or investigative documents that did not need to be disclosed under RCr 7.24(2). RCr 7.24(2) provides:

> On motion of a defendant the court may order the attorney for the Commonwealth to permit the defendant to inspect and copy or photograph books, papers, documents, data and data compilations or tangible objects, or copies or portions thereof, that are in the possession, custody or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of the defense and that the request is reasonable. This provision authorizes pretrial discovery and inspection of official police reports, but not of memoranda, or other documents made by police officers and agents of the Commonwealth in connection with the investigation or prosecution of the case, or of statements made to them by witnesses or by prospective witnesses (other than the defendant).

Toma argues that the Commonwealth violated RCr 7.24(2) by withholding fifty-eight official police reports from its discovery responses, on the pretext that they were internal memoranda. He contends that they were labeled "reports" pursuant to departmental policy, titled "reports" in the header of each document, and were in the same format as other reports which were disclosed. The

-10-

trial court conducted an *in camera* review of these portions of the Commonwealth's file, and found that the documents in question, whatever their designation, were witness statements and memoranda which are specifically excluded by RCr 7.24(2).

One of these undisclosed reports, drafted by Detective Scott Morgan, revealed the identity of a potential eyewitness to the shooting, Thomas Wideman. The document at issue states that Detective Morgan learned from the Commonwealth attorney that Brennan Washington had recently provided information that an individual named "Biscuit" was a possible witness to the shooting and that Biscuit was identified as Thomas Wideman. Two detectives tried unsuccessfully to contact Wideman at different addresses.

The trial court found that the document was not an official police report requiring disclosure, in reliance on Detective Morgan's testimony that the template he used to compose the document was the standard form used by the police department at the time to document any occurrence. His intent in drafting the document was to memorialize what had occurred in order to turn the information over to the prosecution and he described the document as work product prepared in the investigation of the case. The trial court found his testimony to be credible and observed that Morgan, as the author of the document, was in the best position to testify about his intent in creating it.

The trial court further found that Toma was not prejudiced by the Commonwealth's failure to produce the document. Wideman was not a confirmed witness and the police department had not been able to contact him. The trial court also discounted Toma's argument that Wideman's testimony could have been used to impeach Brennan's testimony, as it was unlikely that Brennan would have provided the prosecutor with information regarding a possible witness who would undermine Brennan's version of what had occurred.

Another document which was not disclosed contained information provided by Toni Cremeans, who informed the police that an individual named "Beanie" might have witnessed the shooting. Detective Josh Baker testified that the police had been unable to locate Beanie.

Documents regarding the police investigation and interviews with Mary Taylor and Kassie Jones were also not disclosed. The document pertaining to Mary Taylor states that she contacted Detective Morgan on December 16, 2016, identifying herself as being part of the Washington family. She told Morgan that she had been conducting her own investigation of the shooting and "felt like" there was a reasonable doubt that Toma Washington was responsible. She was not in town at the time of the shooting and stated that she did not have any direct knowledge of the shooting. She stated that she believed the detectives should

speak with DJ Washington who lives with Brennan Washington and that the shooting had something to do with all parties being part of the drug trade.

The document regarding Kassie Jones indicates that Detective Morgan interviewed her on December 27, 2016. He asked her if she knew Toma Washington. She replied that the last time she had any contact with him was approximately two weeks prior to the shooting. She stated she knew the victim and had heard on the street that a girl named "Whitney" was responsible for the shooting. Detective Morgan asked her if she knew "Marky Mark." She replied that he was a male with one leg who lives on Meagher Avenue next to an alley and that she had not been inside his residence since around October 2016. Jones also stated that, several days before Christmas, she gave a ride to a black girl with short hair in her early twenties named Risha. Risha was intoxicated and spoke about the shooting. Risha said that Marky Mark knows what happened and hid "them" out. She said that Marky Mark knows "where everything is at." Jones stated that Risha is not from Frankfort and does not know Jaleesa or Toma. Jones told the detective she dropped Risha at Marky Mark's residence.

Toma argues that the information in these documents could have been used by the defense to conduct further investigation into potential witnesses to the shooting. But the value of this evidence is speculative. The statements of these witnesses consist largely of hearsay, relating what they had heard from others

-13-

about what may have occurred at the shooting or about who may have witnessed it.

Mere speculation or conjecture cannot be the basis of CR 60.02(f) relief. *Foley*, 425 S.W.3d at 887-88 (citation omitted). In any event, Toma received the actual and complete witness statements upon which these police documents were based and was therefore fully aware of what these witnesses had told the police.

In sum, Toma's allegations regarding these documents do not meet the high standard necessary to merit relief under CR 60.02(f). Rule 60.02(f) "may be invoked only under the most unusual circumstances . . . and relief should not be granted . . . unless the new evidence, if presented originally, would have, with reasonable certainty, changed the result." *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996). Toma had access to the information in these documents in the form of the actual witness statements, and he does not explain what additional information the police documents contain that would, with reasonable certainty, have caused him to reject the plea offer and procced to trial.

Toma also argues that the Commonwealth withheld evidence in violation of his due process rights under *Brady v. Maryland*, *supra*. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. 83, 87, 83 S. Ct. at 1196-97. To rise to the level of

a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; . . . [the] evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Goben v. Commonwealth*, 503 S.W.3d 890, 914 n.21 (Ky. 2016) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999)).

In the context of guilty plea proceedings, the Supreme Court held that *Brady* does not apply to the disclosure of material impeachment evidence. *See United States v. Ruiz*, 536 U.S. 622, 633, 122 S. Ct. 2450, 2457, 153 L. Ed. 2d 586 (2002) ("[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."). The Supreme Court has not decided if *Brady* applies to material exculpatory evidence. We need not address the issue here, however, because even if *Brady* does apply, Toma's claims do not rise to the level of meriting CR 60.02(f) relief.

The evidence at issue consists of photographs of text messages between Whitney and Brennan Washington which they exchanged on the evening of the day Jaleesa was shot. Brennan initiated the contact, telling Whitney he heard a female was shot. Whitney told him it was Jaleesa. The following exchange took place:

Brennan:  WHAAAAAT

Whitney:  I tried to tell you.

Brennan:  Wtf.  Is she ok.

Whitney:  Idk someone told me she got airlifted out I'm not sure if its true

Brennan:  Dam it was on the news

Brennan:  Girl did u shoot that girl

Whitney:  Shut the f***ck up  Oh u wanna play your role huh

Brennan:  Lol.  Naw a mf just tried to say u did  . . . . N***a I know u wasn't even around

Whitney:  Toma did that s**t n I know it . . . He pulled it out n pulled the trigger in front of Joey right before we pulled up.  I told you he was the one

Brennan:  S**t.  I'm glad you got away from that n***a. I'm glad you and the kids are okay

Whitney:  Me too

In its March 1, 2021 order, the trial court found that the photographs of these Facebook messages taken from the screen of Whitney's phone were disclosed to the defense on a disc as part of the February 13, 2017 discovery. Toma argues that the trial court's finding was erroneous, based on the Franklin Circuit Court clerk's affidavit stating that typically the circuit clerk is only provided with a photocopy of the disc provided to defense counsel and therefore

-16-

the actual disc was not in the court record. Toma argues that the trial court could not therefore have reviewed the disc to make sure the photographs were on it.

In its order of April 9, 2021, the trial court held that even if the photos were not included on the disc, the Facebook messages were not withheld from the defense because they were contained in a recorded interview of Whitney Washington which was provided to the defense as part of the January 8, 2018, discovery response. In the interviews, conducted by the police on December 13 and 15, 2016, Whitney recalled her Facebook exchange with Brennan and recounted it to the police. We have reviewed the recording of the interview and Whitney summarized and then read aloud from the phone the full exchange with Brennan. This claim is therefore without merit because the evidence was disclosed to Toma.

Toma argues that he was entitled to an evidentiary hearing on his CR 60.02 motion. "Before the movant is entitled to an evidentiary hearing, he must affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief." *Gross*, 648 S.W.2d at 856. Toma's allegations do not rise to the level of meriting an evidentiary hearing.

**II. RCr 11.42 Claim**

Toma also argues that his defense counsel was ineffective for failing to conduct a meaningful investigation of witnesses and that he was entitled to an

evidentiary hearing on this claim. When a defendant claims that "he was unable to intelligently weigh his legal alternatives in deciding to plead guilty because of ineffective assistance of counsel, he must demonstrate the following":

> (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

*Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. App. 2004).

The Commonwealth produced numerous witness statements to the defense on December 20, 2017, and January 8, 2018, in compliance with the deadline in the trial court's discovery order. The trial was scheduled to take place on January 22, 2018. At the hearing on the motion for a continuance, defense counsel told the court he could not effectively try a murder case on the scheduled date. He explained that ten of the witness statements were from people of whom he had never heard and that he could not assure his client he had followed down the trail of all the evidence if he did not have time to investigate. The trial court stated it would issue an order on the continuance motion the following Monday. Before the trial court issued its ruling, defense counsel advised Toma to accept the Commonwealth's plea offer.

Toma argues that his attorney's advice constituted ineffective assistance of counsel because, by counsel's own admission to the trial court, the investigation into the case was incomplete. Toma contends that, if the investigation had been completed and he fully understood the evidence in his case, a decision to reject the plea offer would have been rational under the circumstances and he would have insisted on going to trial. Toma does not explain with any specificity what evidence would have persuaded him to change his mind and go to trial. He alludes to Kassie Jones's statement that she heard a girl named Whitney was responsible for the shooting and that Marky Mark knew what happened. But Toma and his attorney knew that Whitney had a motive to kill the victim and defense counsel interviewed both Brennan and Whitney shortly after the shooting. The allegation that Marky Mark knew what happened is completely unsupported.

"Advising a client to plead guilty is not, in and of itself, evidence of any degree of ineffective assistance of counsel." *Rigdon*, 144 S.W.3d at 288. The record shows that Toma's attorney pursued his defense with vigor. He obtained an investigator and funding for a forensic examiner. He filed numerous motions related to discovery. His motion seeking a continuance does not undermine the wisdom of his decision to advise Toma to accept the plea offer. Toma was facing a murder charge as well as two charges of PFO I. His counsel had to weigh the benefit of accepting the Commonwealth's favorable plea offer against going

-19-

forward to trial based on the hope that some of the witness statements might yield a credible witness who could exonerate Toma or a credible alternate perpetrator of the crime. Under the circumstances, his recommendation to Toma to accept the plea offer was well-founded.

An evidentiary hearing is only required "if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001) (citations omitted). There is no material issue of fact that needs to be resolved here and therefore an evidentiary record was not required.

## CONCLUSION

For the foregoing reasons, the Franklin Circuit Court's orders denying Toma's motion to set aside his conviction are affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Whitney N. Wallace
Christine N. Madjar
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Bryan D. Morrow
Assistant Attorney General
Frankfort, Kentucky