Victor Dewayne **TAYLOR**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2008–SC–000273–MR.

Supreme Court of Kentucky.

June 25, 2009.

Rehearing Denied Oct. 1, 2009.

Thomas More Ransdell, Heather Christina McGregor, Assistant Public Advocates, Department of Public Advocacy, Frankfort, KY, Dennis James Burke, Assistant Public Advocate, Department of Public Advocacy, LaGrange, KY, for Appellant.

Jack Conway, Attorney General, Matthew Robert Krygiel, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, for Appellee.

Opinion of the Court by Justice NOBLE.

At a jury trial, Appellant Victor Dewayne Taylor was convicted of two counts of murder, kidnapping, first-degree robbery, and one count of first-degree sodomy. He was sentenced to death on each of the murder charges and twenty years' imprisonment on each of the other charges. On this matter of right appeal, Ky. Const. § 110(2)(b), Appellant argues that the trial court should not have dismissed his KRS 422.285 proceeding without submitting an anal swab for DNA testing or holding an evidentiary hearing to determine why the Commonwealth did not make the swab at issue available. Finding Appellant's argument unpersuasive, the trial court is affirmed.

## I. Background

When the bodies of the two murder victims in this case were discovered in 1984, they were missing their pants and the medical examiner collected anal swabs from them. The anal swab collected from one of the victims yielded a sample of human spermatozoa, but serological testing done on the anal swab to determine ABO blood grouping for trial purposes failed to produce any result. The trial in this matter pre-dated modern DNA testing.

Subsequently, Taylor filed a federal habeas corpus petition in the United States District Court for the Eastern District of Kentucky, and moved for funds to conduct DNA testing on the anal swab. The District Court determined Taylor had a state court remedy because he had never requested DNA testing pursuant to KRS 422.285, and ordered Taylor to first exhaust his state options for DNA testing.

Taylor then filed a motion (petition) in Fayette Circuit Court, requesting DNA testing pursuant to KRS 422.285, the statute permitting persons sentenced for capital crimes to request DNA testing, and

review of the evidence to be tested began. Sometime later, the Commonwealth informed Taylor and the trial court that it had conducted its own DNA testing on one of the two slides remaining from the anal swab, Exhibit 38–1,[1] contrary to a previously entered preservation of evidence order by the Circuit Court. The Commonwealth sent one of the slides to Orchid Cellmark Laboratory, and the report indicated it was unsuccessful in obtaining results from its testing. Therefore, one slide remained, and Taylor wished to have it tested under a new form of DNA testing known as mini-Short Term Repeat ("mini-STR") by Bode Technology Group.[2]

The Commonwealth produced an inventory of evidence as required by KRS 422.285(6).[3] In reference to "Lab Report Number 84–2–3096," one of the original lab reports prepared by Durbin before the original trial in this case, the Commonwealth's inventory of items located at the Jefferson Regional Crime Lab erroneously included "Exhibit 38: Anal swab from [one of the victims in this case]."

The trial court subsequently entered an order modifying its previous preservation order and directing the Kentucky State Police Jefferson Regional Laboratory to send all evidence related to the anal swabs collected from [one of the victims in this case] (KSP exhibit 38); including, if they exist, the anal swabs, all slides developed from the anal swabs, any sticks that were originally part of the anal swabs, any packaging that has been used to hold the anal swabs or slides, and any containers that have been used to process the anal swabs; to Bode Technology Group ... where it shall be subjected to mini-STR DNA testing and analysis.

Bode Technology Group was unable to develop a DNA profile from the two slides submitted by the Commonwealth (one of which had already been subjected to testing by the Commonwealth), and Taylor filed a motion in the Fayette Circuit Court, Special Division, requesting an evidentiary hearing be held to determine why the Commonwealth had not also sent the anal swab listed in its inventory of evidence to Bode Technology Group, and arguing that a hearing was needed regarding the Commonwealth's preemptive testing of one of the slides. Taylor's motion for an evidentiary hearing was denied and his KRS 422.285 proceeding was dismissed.

## II. Analysis

Despite the fact that the Commonwealth's inventory of evidence copied a portion of the lab report prepared for the original trial in this case, a review of the record demonstrates that the parties understood that the anal swab had been consumed and only the slides derived from the anal swab remained for DNA testing. The initial petition acknowledged "that the swabs were consumed in analysis ... However, some sort of a slide must have been made in order for the contents of the swab to have been examined under a microscope so that the determination could be made that human spermatozoa were

1. In preparation for trial, the anal swab at issue, "Exhibit 38" from the lab report prepared by William Morris Durbin, a forensic serologist at the Jefferson Regional Crime Lab, was used by Durbin to create two slides for his testing ("Exhibits 38–1 and 38–2"), and he noted in his report that the swab was consumed as part of his testing.

2. The Commonwealth describes the testing performed on Exhibit 38–1 by Orchid Cellmark Laboratory as merely "standard STR" testing.

3. KRS 422.285(6) provides in part: "The state shall prepare an inventory of the evidence and shall submit a copy of the inventory to the defense and the court."

present...." The trial judge's order specifically directed the Jefferson Regional Laboratory to "send all evidence related to the anal swabs collected from [one of the victims in this case] (KSP exhibit 38); including, *if they exist*, the anal swabs, all slides developed from the anal swabs...." (Emphasis added.) It is clear from the record that neither the trial judge nor counsel for either party presumed any actual anal swabs were still in existence. The parties specifically referred to and discussed the slides.

Taylor cites *Arey v. State*, 400 Md. 491, 929 A.2d 501 (2007), in support of his position. In *Arey*, Maryland's highest court agreed that the trial court erred in dismissing the appellant's petition for testing based on a police officer's representation that because he had checked the Evidence Control Unit and the forms on file, it was reasonable to conclude the evidence no longer existed. The Court concluded that "[s]earching the ECU alone was insufficient," and that "[b]ecause the State was the custodian of evidence, the State needs to check any place the evidence could reasonably be found, unless there is a written record that the evidence had been destroyed in accordance with then existing protocol." *Id.* at 503–04. In sum, the Court held "a court should not conclude that evidence no longer exists until the State performs a reasonable search for the requested evidence." *Id.* at 504.

*Arey* is distinguishable because the record in this case demonstrates that the parties understood there were only two slides remaining. Additionally, because the lab report prepared by Durbin said the anal swab was consumed in testing, it fits within the exception in *Arey* for "written evidence that the evidence had been destroyed...." *Id.* at 504.

Taylor's initial petition shows that from the beginning he was well aware of the fact that there was no longer a swab, but that he thought there were slides containing spermatozoa. Obviously, the Commonwealth merely made a mistake in incorrectly transcribing the list of remaining evidence. Thus there is no valid argument that there was improper destruction of evidence regarding the swab.

However, the larger question goes to the Commonwealth's preemptive test of one of the slides. Though the Commonwealth technically disobeyed the court's preservation of evidence order by testing one of the slides, the testing it did was not an improper form of testing, and the Commonwealth's mistake in testing one of the slides does not rise to the level of misconduct that would require us to reverse for a new trial in this case. Taylor cannot establish under the statute that even if he had both slides available for DNA testing under his preferred method, that he would have been able to establish anything more than a mere possibility—as opposed to the "reasonable probability" required under the statute—of exculpatory evidence. Consequently, there being no evidence favorable to him, the trial court was not required to hold a hearing and properly dismissed the KRS 422.285 petition.

## III. Conclusion

Under KRS 422.285(1), a defendant may request DNA testing and analysis of any evidence that is in the possession or control of the court or Commonwealth. Following the testing, the court is required to hold a hearing only "if the results of the DNA testing and analysis are favorable to the petitioner." KRS 422.285(9). However, "[i]f the results of the DNA testing and analysis are not favorable to the petitioner, the court shall dismiss the petition." KRS 422.285(8). Here, the laboratories were unable to get a DNA profile from any of the samples submitted. Therefore, the

test results were not favorable to the petitioner, and the trial court correctly dismissed his petition.

For the foregoing reasons, the judgment of the Fayette Circuit Court dismissing Taylor's KRS 422.285 proceeding is affirmed.

All sitting. All concur.