RENDERED:  JUNE 25, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2023-SC-0513-MR

COMMONWEALTH OF KENTUCKY                                          APPELLANT


ON APPEAL FROM FAYETTE CIRCUIT COURT
V.        HONORABLE JEAN CHENAULT LOGUE, RET. CIRCUIT JUDGE
NO. 85-CR-00334


VICTOR D. TAYLOR                                                    APPELLEE


**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

The Commonwealth of Kentucky seeks a determination of whether the Fayette Circuit Court inappropriately granted a motion by Victor D. Taylor ("Taylor") to present his intellectual disability claim through a CR[1] 60.02 motion.  Specifically, it asks if a special exception exists to the "reasonable time" restriction for motions under CR 60.02(d)-(f) for death-row inmates who raise intellectual disability claims.  For the reasons stated below, we hold that the circuit court did not abuse its discretion by denying the Commonwealth's motion to dismiss and permitting Taylor to litigate his intellectual disability claim under CR 60.02.

---

[1] Kentucky Rules of Civil Procedure.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Taylor's placement on death row at the Kentucky State Penitentiary was a consequence of his conviction in the 1986 capital murder trial on the kidnapping, sodomy, and execution-style killing of two Trinity High School boys who had been heading to a football game.  He was convicted of first-degree murder, two counts of first-degree kidnapping, two counts of first-degree sodomy, and one count of first-degree robbery.[2]  Taylor's death sentences on the kidnapping charges were vacated, and he filed a motion under RCr[3] 11.42 to set aside the remaining judgments against him alleging violation of double jeopardy protections.  The RCr 11.42 motion was denied, and this Court affirmed the denial.  *Taylor v. Commonwealth*, 63 S.W.3d 151 (Ky. 2001).  Later, Taylor filed a motion for a new trial pursuant to CR 60.02 alleging the recantation of witness testimony, an issue with a juror, and a challenge to a statute. *Taylor v. Commonwealth*, 175 S.W.3d 68 (Ky. 2005).  This, too, was denied.

Most recently, Taylor asserted his KRS[4] 422.285 proceeding was inappropriately dismissed without submitting DNA testing or holding an evidentiary hearing to explain why the Commonwealth did not make the swab at issue available for testing.  As the slides were the items at issue and not the original swabs (which had been consumed in testing), the parties indicated an

---

[2] *Taylor v. Commonwealth*, 821 S.W.2d 72 (Ky. 1990), *cert. denied* 502 U.S. 1100, and *cert. denied* 502 U.S. 1121 (1992).

[3] Kentucky Rules of Criminal Procedure.

[4] Kentucky Revised Statutes.

understanding there were only two slides remaining, and the test results were not favorable to the petitioner, the trial court correctly dismissed this petition. *Taylor v. Commonwealth*, 291 S.W.3d 692 (Ky. 2009) (affirming the dismissal of the petition).

Before us now is a portion of Taylor's October 17, 2022, omnibus motion. Specifically, his CR 60.02 motion to vacate his death sentence asserts that, as an intellectually disabled person, KRS 532.130-.140 and the Eighth Amendment to the United States Constitution prohibit the enforcement of his two death sentences. The court directed the Commonwealth to file a response regarding the procedural viability of this claim. That response asserted the motion was untimely because Taylor's level of intellectual functioning had been known to his counsel since before his trial in 1986 and, therefore, should have been presented through the prior post-conviction proceedings. A hearing on the motion was held on July 18, 2023.

On October 3, 2023, the trial court denied the Commonwealth's motion to dismiss Taylor's Motion to Vacate, determining Taylor "shall be permitted to present his intellectual disability argument" pursuant to his CR 60.02 motion. The Commonwealth raised this appeal, asserting that the trial court incorrectly interpreted relevant legal precedent. The circuit court did not grant CR 60.02 relief. It denied the Commonwealth's motion to dismiss and allowed the claim to proceed.

The issue is not whether Taylor has proven or can prove intellectual disability, but whether the circuit court abused its discretion by permitting

3

Taylor to litigate that claim under a CR 60.02 within the context of his death penalty conviction.

## II.    STANDARD OF REVIEW

Whether a defendant is entitled to the extraordinary relief provided by CR 60.02 is a matter left to the sound discretion of the court. *Woodall v. Commonwealth*, 709 S.W.3d 71, 76 (Ky. 2024).  We review that finding for an abuse of discretion. *Brown v. Commonwealth*, 932 S.W.2d 359, 361 (Ky. 1996).  This Court has held that actions under CR 60.02 and "the exercise of that discretion will not be disturbed on appeal except for abuse." *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959).  The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).  Accordingly, we will affirm the lower court's decision unless there is a showing of some "flagrant miscarriage of justice." *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983).

CR 60.02(f) permits a claim for relief for "any other reason of an extraordinary nature justifying relief."  The burden of proof in a CR 60.02 proceeding falls squarely on the movant to "affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief." *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997) (citing *Gross*, 648 S.W.2d at 856).

4

### III. ANALYSIS

Before addressing the merits, we first consider Taylor's argument that the Commonwealth improperly appealed from a nonfinal order. Taylor moved to dismiss the appeal below, asserting the Fayette Circuit Court's order merely denied the Commonwealth's procedural challenge and did not constitute an appealable ruling. The Commonwealth responded and asserted jurisdiction pursuant to KRS 22A.020(4), which permits the Commonwealth to take an interlocutory appeal from an adverse ruling in a criminal case.

KRS 22A.020(4) authorizes the Commonwealth to appeal "an adverse decision or ruling of the Circuit Court" when review is important to the correct and uniform administration of the law. Kentucky courts have repeatedly recognized the statute grants the Commonwealth a limited right to interlocutory review unavailable to criminal defendants. See *Commonwealth v. Farmer*, 423 S.W.3d 690, 692 (Ky. 2014); *Commonwealth v. Nichols*, 280 S.W.3d 39, 42 (Ky. 2009). The Commonwealth relies upon that authority here because the circuit court rejected its claim that Taylor's motion was procedurally barred as untimely and successive.

We agree this appeal is properly before the Court. Had the circuit court accepted the Commonwealth's procedural arguments, Taylor's intellectual-disability claim would have been dismissed in its entirety. Thus, the order constituted an adverse ruling within the meaning of KRS 22A.020(4). *See Commonwealth v. Burkhead*, 680 S.W.3d 877, 881–83 (Ky. 2023) (construing "adverse ruling" broadly in the context of Commonwealth appeals). The issue

5

presented—whether CR 60.02 permits litigation of an intellectual-disability claim under these circumstances—is a recurring question of substantial importance to the administration of capital post-conviction proceedings in Kentucky.

At the same time, the interlocutory posture of this case necessarily limits the scope of our review. The circuit court did not adjudicate whether Taylor is intellectually disabled, nor did it vacate his sentence or grant relief under CR 60.02. The court merely denied the Commonwealth's motion to dismiss and permitted Taylor to present evidence in support of his claim. It follows that the only question presently before us is whether the circuit court abused its discretion by allowing the litigation to proceed. We express no opinion regarding the ultimate merits of Taylor's intellectual-disability claim.

Taylor additionally argues portions of the Commonwealth's reliance on 501 KAR[5] 16:310 are unpreserved because the Commonwealth's position before the circuit court differed from the argument advanced on appeal. Taylor notes the Commonwealth previously represented that the proposed administrative regulations had "very little, if any, impact" on the procedural arguments, while now asserting the regulations provide an adequate mechanism for review of intellectual disability claims outside judicial proceedings. To the extent the Commonwealth now characterizes the regulations as effectively eliminating the need for present adjudication of

---

[5] Kentucky Administrative Regulations.

6

Taylor's CR 60.02 motion, that argument was not squarely presented below. Nevertheless, because the Commonwealth consistently argued the claim was procedurally barred as untimely and successive, and because the regulations were discussed before the circuit court as part of the broader procedural framework governing execution-related intellectual disability claims, we address the issue insofar as it bears upon the Commonwealth's preserved timeliness and ripeness arguments.

The legal landscape concerning intellectual disability has vastly shifted since Taylor's trial ended in April of 1986. In 1990, Kentucky passed an exemption statute that prohibits executing individuals with a serious intellectual disability under KRS 532.140(1). This disability is defined as "significant subaverage intellectual functioning," further defined as "an intelligence quotient (I.Q.) of seventy (70) or below," "existing concurrently with substantial deficits in adaptive behavior and manifested during the developmental period." KRS 532.130(2). Also significant, despite being a split decision, was the United States Supreme Court holding in *Ford v. Wainwright,* 477 U.S. 399 (1986).

Recently, relying on established United States Supreme Court precedents, we emphasized procedural due process rights in *Woodall,* stating:

> The only thing all three of these opinions have in common regarding the required procedure, and thus the only process that is necessarily due to a prisoner challenging his death sentence due to insanity, is the opportunity to be heard. *See Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be

7

viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]' " (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). If there was any question about this, in 2007, the U.S. Supreme Court reinforced that "*Ford* requires, at a minimum, that a court allow a prisoner's counsel the opportunity to make an adequate response to evidence solicited by the state court." *Panetti v. Quarterman*, 551 U.S. 930, 952, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). In *Panetti*, the Court declined to "address whether other procedures, such as the opportunity for discovery or for the cross-examination of witnesses, would in some cases be required under the Due Process Clause." *Id.*

*Woodall v. Commonwealth*, 709 S.W.3d 71, 79–80 (Ky. 2024), *reh'g denied*, (Mar. 20, 2025), *cert. denied*, sub nom. *Woodall v. Kentucky*, 223 L. Ed. 2d 560 (Jan. 20, 2026).

Against that constitutional and procedural backdrop, we consider whether the circuit court abused its discretion by permitting Taylor to proceed under CR 60.02. Specifically, we address the Commonwealth's arguments that Taylor's motion is impermissibly successive, untimely under the reasonable-time requirement of CR 60.02(f), and unnecessary in light of the Department of Corrections' amended administrative regulations governing pre-execution medical review. Moreover, although the Commonwealth relies upon recent out-of-state authority suggesting a categorical prohibition on the use of civil rule relief in post-conviction proceedings, we decline to depart from Kentucky's longstanding jurisprudence recognizing the applicability of CR 60.02 in criminal cases, as discussed more fully below.

8

## SUCCESSIVE 60.02 MOTIONS

Relevant here, CR 60.02(f) provides relief from a final judgment, order, or proceeding for "any other reason of an extraordinary nature justifying relief" . . . "made within a reasonable time."  Rule 60.02(f) "may be invoked only under the most unusual circumstances...." *Howard v. Commonwealth,* 364 S.W.2d 809, 810 (Ky. 1963); *see also Cawood v. Cawood,* 329 S.W.2d 569 (Ky. 1959). This invoked relief should not be granted, pursuant to Rule 60.02(f), unless the new evidence, if presented originally, would have, with reasonable certainty, changed the result. *See Wallace v. Commonwealth,* 327 S.W.2d 17 (Ky. 1959). We acknowledge the finding of intellectual disability would, in fact, change the result in accordance with KRS 532.140.

This Court has repeatedly made clear, CR 60.02 does not permit successive post judgment motions, and the rule may be utilized only in extraordinary situations when relief is not available on direct appeal or under RCr 11.42. *McQueen v. Commonwealth,* 948 S.W.2d 415, 416 (Ky. 1997).  That is, CR 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could reasonably have been presented by direct appeal or an RCr 11.42 proceeding. *Id.; Foley v, Commonwealth,* 425 S.W.3d 880, 884-85 (Ky. 2014).  Unlike *Foley,* this case concerns a claim that, if proven, would categorically prohibit execution under both the Eighth Amendment and KRS 532.140, rendering execution a "flagrant miscarriage of justice."  *Id.* at 886 (citing *Gross,* 648 S.W.2d at 858).

In *Bowling,* despite *Atkins*[6] having been decided six months before oral argument was held on his habeas appeal to the Sixth Circuit, and not having raised the issue during normal collateral review, this Court acknowledged one reason for giving retroactive effect to *Atkins* is because it created a new constitutional right. That would not be true if the conviction had been obtained while Kentucky "had in effect at the time of the condemned person's trial a statute affording the same right subsequently created by *Atkins.*" *Bowling v. Commonwealth,* 163 S.W.3d 361 (Ky. 2005) abrogated on other grounds by *Woodall v. Commonwealth,* 563 S.W.3d 1 (Ky. 2018). While *Bowling* recognized that constitutional rights may be waived by failure to timely assert them, *Bowling* preceded the substantial evolution of intellectual disability jurisprudence.

In *Woodall v. Commonwealth,* "[a]fter extensive collateral attack litigation ensued in both state and federal court[,]" the trial court denied Woodall's CR 60.02 motion without holding a hearing. 709 S.W.3d 71, 74 (Ky. 2024). On appeal "[w]e held that a trial court's determination of whether a criminal defendant is intellectually disabled is 'akin to a totality of the circumstances test.'" 709 S.W.3d at 75 (citing *Woodall,* 563 S.W.3d at 6). We then reversed the trial court's order and remanded to the trial court to conduct a hearing on Woodall's potential intellectual disability pursuant to the guidelines we had laid

---

[6] In *Atkins v. Virginia,* the United States Supreme Court held that the Eighth Amendment prohibits the execution of a person who has an intellectual disability. 536 U.S. 304, 321 (2002).

out. *Woodall*, 709 S.W.3d at 75. The constitutional right extends to the application of Kentucky's legal test for intellectual disability. *Id.*

Federal AEDPA[7] cases addressing successive habeas petitions are not controlling in the interpretation of Kentucky's independent post-conviction framework under CR 60.02.[8]

In our own case, Taylor's 2005 motion asserted Taylor was entitled to a new trial for two reasons and sought a declaratory judgment regarding a statute. The first claim involved exculpation of guilt based on the recanted testimony of his co-conspirator. The second claim involved a juror's response to questions during voir dire. Finally, he asserted an infringement on Supreme Court rule-making prerogatives, negating the constitutionality of KRS 422.285. In a split decision, the then Chief Justice Lambert affirmed the trial court's denial of Taylor's CR 60.02 motion on all points and held the encroachment of the statute was unconstitutional, but granted comity. At no point in Taylor's 2005 CR 60.02 Motion was intellectual disability raised, despite *Atkins* having been decided three years prior. *Atkins v. Virginia*, 536 U.S. 304 (2002). Because Taylor's prior CR 60.02 motion did not litigate intellectual disability, it was not inappropriate to raise it. While the claim is a successive CR 60.02 motion, it raises an issue that remains previously un-litigated, and which

---

[7] Antiterrorism and Effective Death Penalty Act of 1996.

[8] The out-of-state authorities cited by the Commonwealth arise under materially different statutory and procedural frameworks, including AEDPA successive-habeas standards not applicable to Kentucky CR 60.02 proceedings.

11

importantly implicates constitutional rights fundamental to procedural due process and the Eighth Amendment.

**TIMELINESS OF 60.02 MOTIONS IN DEATH PENALTY CASES**

The Commonwealth's timeliness argument fails because it treats Taylor's intellectual disability claim as an ordinary collateral attack.  It is not.  An intellectual disability claim in a capital case does not merely challenge the reliability of the conviction or the fairness of the original trial, but it challenges the Commonwealth's present constitutional authority to carry out a death sentence.  That distinction controls the timing analysis.

CR 60.02 motions ordinarily must be brought within a reasonable time, and successive motions are disfavored, but this Court has treated intellectual disability claims in capital cases differently, beginning with *Atkins'* creation of a categorical constitutional limitation on the State's power to execute.  *Atkins v. Virginia,* 536 U.S. 304 (2002).  Notably, Taylor was tried and sentenced before Kentucky statutorily prohibited the execution of intellectually disabled offenders and before *Atkins* made that prohibition a matter of federal constitutional law.  In that circumstance, the claim did not have the same legal significance at trial that it has now.  Additionally, there have been a series of recognizable alterations to this prohibition through Kentucky case law providing further direction.  The most recent and comprehensive explanation on the allowance of a hearing is a discussion of the Supreme Court case *Brumfield v. Cain,* 576 U.S. 305 (2015), found in our Court's *Woodall v. Commonwealth,* 709 S.W.3d 71, 82–83 (Ky. 2024), *reh'g den*ied, (Mar. 20,

12

2025), cert. denied sub nom. *Woodall v. Kentucky*, 223 L. Ed. 2d 560 (Jan. 20, 2026). Like Victor Taylor,

> Brumfield had been sentenced to death . . . at a time when U.S. Supreme Court precedent permitted the imposition of the death penalty on a person with an intellectual disability. *Id.* at 308, 135 S.Ct. 2269. After the Supreme Court rendered *Atkins,* Brumfield raised a post-conviction Atkins claim, seeking to invalidate his death sentence due to his intellectual disability. *Id.* at 309, 135 S.Ct. 2269. He sought an evidentiary hearing and pointed to mitigation evidence that was offered at his trial to support his request. *Id.* Brumfield further sought funds to obtain experts to provide evidence supporting his claim. *Id.* at 310, 135 S.Ct. 2269. The Louisiana trial court dismissed his petition without holding a hearing or granting funds for Brumfield to conduct additional investigation. *Id.* The trial court relied in large part on the testimony presented at Brumfield's original trial in making its determination. *Id.*
>
> Brumfield filed a petition for habeas corpus in federal court. *Id.* at 311, 135 S.Ct. 2269. On review of that petition, the U.S. Supreme Court noted that "in seeking an evidentiary hearing, Brumfield was not obligated to show that he was intellectually disabled, or even that he would likely be able to prove as much. Rather, Brumfield needed only raise a 'reasonable doubt' as to his intellectual disability to be entitled to an evidentiary hearing." *Id.* at 320, 135 S.Ct. 2269. The Court explained that "Brumfield had not yet had the opportunity to develop the record for the purpose of proving an intellectual disability claim. At his pre-*Atkins* trial, Brumfield had little reason to investigate or present evidence relating to intellectual disability." *Id.* at 321, 135 S.Ct. 2269. It even explained that at a trial "conducted prior to *Atkins,* the defense's trial strategy may have been to shift the focus away from any diagnosis of mental retardation." *Id.* (internal quotation marks omitted). Accordingly, the Supreme Court held that "the state trial court should have taken into account that the evidence before it was sought and introduced at a time when Brumfield's intellectual disability was not at issue. The court's failure to do so resulted in an unreasonable determination of the facts." *Id.* at 322, 135 S.Ct. 2269. After a thorough review, we cannot conclude that *Brumfield* stands for the proposition that any reliance on evidence introduced

13

> at a pre-*Atkins* trial is reversible error in a hearing held pursuant to *Atkins*. Instead, *Brumfield* merely held that the evidence elicited at Brumfield's pre-*Atkins* trial was sufficient to raise a reasonable doubt as to his asserted intellectual disability and, as such, Brumfield was entitled to an evidentiary hearing on the matter. *Id.* at 321, 135 S.Ct. 2269.

*Woodall*, 709 S.W.3d at 82–83.

The Commonwealth argues Taylor waited too long because his intellectual-functioning evidence was known decades ago. That argument has merit in ordinary CR 60.02 litigation, but it is not dispositive here. The question is not simply whether some evidence of low intellectual functioning existed earlier; the question is whether the circuit court abused its discretion by allowing Taylor to litigate a claim that, if proven, would establish that the Commonwealth lacks authority to execute him. We hold the trial court's affording a defendant their Eighth Amendment rights in this manner is not an abuse of discretion. We do not hold that intellectual-disability claims are categorically exempt from CR 60.02's reasonable-time requirement. Rather, we hold only that the circuit court did not abuse its discretion in concluding this particular claim warranted further adjudication.

The Commonwealth also asserts the lack of a signed death warrant renders the motion premature. A death warrant may create urgency, but it does not create the constitutional right, the circuit court's authority, or the need for adjudication. Requiring Taylor to wait until a warrant is issued would undermine finality rather than promote it, because it would defer a potentially

14

dispositive constitutional issue until the eve of execution. Nothing in CR 60.02 *Atkins*, *Woodall,* or any Kentucky legal precedent requires such a delay.

Nor does *Wilson v. Commonwealth* compel reversal. 403 S.W.2d 710 (Ky. 1966). While *Wilson* involved a defendant under an active death warrant, no part of *Wilson* held that an intellectual disability claim becomes cognizable only after a warrant is signed. Rather, *Wilson* recognized that certain intellectual disability claims may become viable only after conviction due to evolving constitutional standards governing execution eligibility. The existence of a death warrant in *Wilson* informed the procedural posture of that case, but it did not create a jurisdictional prerequisite to judicial review.

The contention that Taylor's claim is untimely because he did not raise it earlier, while also contending that it is unripe because no execution date has been set cannot simultaneously exist. A claim cannot sensibly be both too late and too early where the asserted defect is the Commonwealth's lack of authority to execute. The circuit court did not abuse its discretion by rejecting that contradiction and allowing the claim to proceed.

Finally, we decline the Commonwealth's invitation to characterize Taylor's "untimeliness" as mere gamesmanship or strategic delay. The circuit court did not excuse dilatory conduct categorically, nor did it create a blanket exemption from CR 60.02's reasonable-time requirement for intellectual disability claims. Instead, the court considered the unique constitutional nature of the claim, the substantial evolution of governing law, and the absence of any present execution warrant before concluding Taylor should be

15

permitted to proceed.  Under these circumstances, permitting litigation of a potentially dispositive constitutional bar to execution was not an abuse of discretion.

**ADMINISTRATIVE REGULATIONS RE: PRE-EXECUTION MEDICAL EXAMS**

The Commonwealth further argues that the amended administrative regulations governing pre-execution medical procedures adequately protect Taylor's constitutional rights and render present judicial review unnecessary. Specifically, the Commonwealth relies upon 501 KAR 16:310, which provides a mechanism for review of Department of Corrections medical records prior to execution and permits suspension of an execution if indicators of intellectual disability are identified. We disagree that these regulations replace or supplant the judiciary's constitutional obligation to adjudicate a properly presented intellectual disability claim under CR 60.02.

The regulations provide for a review of "the department medical records" in search of "[a] diagnosis of an intellectual disability" under certain provisions including the Diagnostic and Statistical Manual (DSM), as defined by the American Association on Intellectual disabilities, "other similar prevailing medical standards and clinical guidelines," or an "IQ test score of seventy-five (75) or lower after adjustment for the applicable standard error of measurement."  If "Serious Intellectual Disability" is found, the regulations proceed under Section 4 of the statute requiring notification of certain persons and suspension of execution "to allow procedures consistent with KRS 532.135."  That statute essentially requires submission of intellectual disability

16

evidence to be submitted prior to trial, allows the Commonwealth to rebut such evidence, and leads us to KRS 532.140, which prevents execution of defendants with serious intellectual disabilities or mental illness and designates authorized sentences.

Relying upon these regulations as a safety valve in this instance is error. These regulations are found under the Justice and Public Safety Cabinet – Department of Corrections "Pre-execution medical actions" administrative regulations. While the ultimate prevention of execution of a person with a serious intellectual disability seems likely, the Eighth Amendment is not protected by our judicial system if we abdicate our role to uphold that protection within our court system.

Here, the Commonwealth would like us to delegate this determination to the Department of Corrections, whose procedures do not have the clarity of due process and protections of legal jurisprudence. In fact, they are only required to review medical records. This concern is especially significant in light of our recent decision in *Woodall v. Commonwealth,* which held there is no reason why this same analysis (the procedural due process requirements of a post-conviction attack on a death sentence due to insanity) does not apply to a post-conviction attack on a death sentence due to intellectual disability. 709 S.W.3d 71, 80 (Ky. 2024). We recognized that the procedural due-process protections applicable to competency-for-execution proceedings likewise apply to post-conviction intellectual disability claims because "[t]he same interests are at stake, and the determinations made by the trial court are sufficiently

17

similar." *Id.* at 80. We concluded in *Woodall* that due process requires a meaningful opportunity to be heard before the Commonwealth may carry out a death sentence where intellectual disability is credibly alleged. The trial court was required to provide Woodall with an opportunity to be heard in order for his due process rights to be vindicated with regard to that claim.[9] The Department of Corrections' administrative review process cannot substitute for that judicial determination.

The legal landscape continued to develop after *Atkins* when in *Hall v. Florida,* the U.S. Supreme Court rejected a rigid and bright-line IQ test score cut-off for determining intellectual disability as inconsistent with prevailing clinical standards. 572 U.S. 701, 723 (2014). Finally, in *Moore v. Texas*, the U.S. Supreme Court further emphasized that courts must be guided by current medical and clinical standards when evaluating intellectual disability in capital cases. 581 U.S. 1, 15 (2017). These decisions collectively demonstrate that intellectual disability determinations require nuanced, individualized judicial consideration—not merely administrative screening.

To emphasize, while 501 KAR 16:310 may provide an additional procedural safeguard against unconstitutional execution, it is not a substitute for judicial adjudication of a properly presented CR 60.02 intellectual disability claim. The circuit court, therefore, did not abuse its discretion by permitting

---

[9] In Woodall's case, he was given the opportunity and the trial court found he did not prove that he was intellectually disabled by a preponderance of the evidence to be supported by substantial evidence. *Woodall,* 709 S.W.3d at 86.

18

Taylor to proceed with litigation of that claim notwithstanding the existence of the amended regulations.

We recognize the Commonwealth's substantial interest in finality, particularly in capital litigation. But the prohibition against executing intellectually disabled individuals concerns the state's authority to impose the punishment itself, not the State's authority to sentence. Where a litigant presents a colorable claim that execution is constitutionally barred, heightened reliability necessarily tempers ordinary finality concerns.

**KENTUCKY'S RECOGNITION OF CR 60.02 IN CRIMINAL PROCEEDINGS**

The Commonwealth's supplemental reliance upon *State v. Hill* is unpersuasive because Ohio's post-conviction framework differs materially from Kentucky's longstanding jurisprudence regarding the application of civil rules in criminal proceedings. __ N.E.3d __, 2026 WL 1102912 (Ohio, Apr. 23, 2026). In *Hill*, the Ohio Supreme Court concluded that Ohio's post-conviction statute provided the "exclusive remedy" for collateral attacks and rendered Ohio Civil Rule 60(B) "manifestly inapplicable" to post-conviction proceedings. Kentucky, however, has long taken the opposite approach. Our RCr 13.04 expressly provides that "[t]he Rules of Civil Procedure **shall** be applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure." (emphasis added).

Consistent with that directive, Kentucky courts have repeatedly recognized the applicability of CR 60.02 in criminal and post-conviction proceedings. *See Gross*, 648 S.W.2d at 856 (recognizing CR 60.02 as part of

19

Kentucky's organized structure for post-conviction review); *McQueen*, 948 S.W.2d at 416 (acknowledging CR 60.02 relief remains available for extraordinary claims not otherwise subject to review); *Foley*, 425 S.W.3d at 884 (court did not abuse its discretion denying a motion for failure to bring within a "reasonable time" when twenty years had passed); and *Woodall*, 709 S.W.3d at 76 (acknowledging the court's lack of discretion regarding subjecting an intellectually disabled person to the death penalty). Unlike Ohio's statutory scheme, Kentucky's criminal rules expressly contemplate limited application of the civil rules, and Kentucky precedent has long recognized CR 60.02 as an extraordinary procedural mechanism within capital post-conviction litigation. Hence, *Hill* neither controls nor alters our analysis.

This case presents the type of extraordinary circumstance contemplated by CR 60.02(f). Taylor does not merely challenge the fairness of his trial or seek relitigation of previously adjudicated issues; rather, he asserts that the Commonwealth is constitutionally prohibited from executing him at all. Since Taylor's conviction became final, both Kentucky law and federal constitutional jurisprudence have substantially evolved regarding intellectual disability and capital punishment, including *Atkins*, *Hall*, *Moore*, and this Court's decision in *Woodall*. A claim that the State lacks lawful authority to impose the death penalty implicates the heightened reliability demanded in capital proceedings

20

and falls within the narrow category of claims warranting extraordinary post-conviction review.[10]

## IV. CONCLUSION

We do not decide today whether Taylor is intellectually disabled. We decide only that the circuit court did not abuse its discretion by allowing him to present that claim. Because Taylor's motion alleges a constitutional bar to execution, and because Kentucky precedent recognizes CR 60.02 as an appropriate vehicle for such a claim, the circuit court's ruling was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. The order of the Fayette Circuit Court is affirmed.

All sitting. Lambert, C.J.; Bisig, Goodwine, and Nickell, JJ., concur. Conley, and Thompson, JJ., concur in result only.

---

[10] In reference to the timeliness of Mr. Taylor's 60.02 petitions, this holding is limited to those death row inmates who were sentenced pre-*Atkins* and who have not otherwise received an intellectual disability hearing.

COUNSEL FOR APPELLANT:

Russell M. Coleman
Kentucky Attorney General

Matthew R. Krygiel
John H. Heyburn
Assistant Attorneys General

Thomas Allen Van DeRostyne
Jefferson County Attorney

COUNSEL FOR APPELLEE:

David M. Barron
Assistant Public Advocate